M. XIMINES AND W. D. MAYS v. S. S. SMITH ET AL.

1. A postnuptial contract will only be enforced when equitable in its terms, and its observance is demanded by the clearest principles of justice.
2. See this case for circumstances under which a postnuptial contract will not be enforced.

APPEAL from Bexar.    Tried below before the Hon. Geo. N. Noonan.

The facts will be found fully stated in the opinion.

*Wælder & Upson*, for M. Ximines.

*Walton & Green*, for Mays.

*S. G. Newton*, for Ursula Ximines.

WALKER, J.—No impartial mind can investigate this case without being struck forcibly with the manifest injustice which has been done, and yet it may be somewhat

difficult for us to point out wherein the law has been violated. Let us first look at a few of the leading facts. Melchoir and Ursula Ximines were man and wife in September, 1860, at which time Melchoir, having inherited certain real property from his mother in the city of San Antonio, sold the same to S. S. Smith for the sum of $2000 on deferred payments, for which two notes are given payable in one and two years from date. At this time Ursula appears to have become dissatisfied with her spouse, and had determined not to live with him, while on the other hand Melchoir was uxorious, fond of Ursula, and willing to secure her continuance in the marital partnership on terms of bargain and sale, and a postnuptial contract was thereupon entered into between Melchoir and Ursula to the effect that Melchoir should permit the notes from Smith to be made payable to his wife, who is described in the notes as Doña Ursula Parias de Ximines, but upon the express condition that Doña Ursula should in future lead a "*good life*," and live with him in wedlock, conforming to the duties and responsibilities of the marital contract, to all of which Doña Ursula agreed. But she appears very soon to have lost sight of her marital engagements—her contract with Melchoir—and returned again to her former ways; in other words, she deserted his bed and board, and went to live in the city of San Antonio, west of the San Pedro. Following this desertion by his wife Melchoir caused a notice to be published in the city newspapers, notifying all persons of the fraud which Ursula had practiced upon him, and warning the public against purchasing the S. S. Smith notes. Matters stood in this posture on the fifteenth of February, 1861, when there seems to have been an attempted reconciliation between the parties, and Melchoir made a formal renunciation in writing of his interest in the notes to his wife Ursula in the presence of two witnesses, and this renun-

ciation was filed with the papers in a suit then pending between the parties in the District Court of Bexar county; and this renunciation was made, as it appears, upon the agreement of the wife to return to her husband, and live with him as his wife at his home in Wilson county. The wife however refused to live with him, and even warned him against coming to the house where she lived, and she has ever since continued to live apart from him.

It may here be noticed that in the year 1868 Melchoir obtained a divorce from his wife Ursula. Prior to the divorce each of the parties commenced a suit against Smith for the collection of the notes ; but by an agreement there was but one suit prosecuted, and Ursula, by an amended petition, filed on the tenth of February, 1872, claimed the notes as her separate property, and obtained judgment against Smith, in her own right, for the whole amount, at the May term, 1872, at which term of the court Melchoir filed his motion, accompanied by a sworn plea to the court asking that the judgment be changed to a judgment in his favor. He charges Ursula with fraud in obtaining the judgment in her own right ; he charges that the suit was being prosecuted in their joint names, by counsel employed by him, and that he was not aware of any separate claim being set up by Ursula to the judgment, until after its rendition. There was also a prayer for an injunction against Ursula, to restrain her from collecting or disposing of the judgment. The injunction was granted, and, on hearing, the judgment was set aside and a new trial awarded. The result of the new trial was a verdict and judgment for Ursula.

W. D. Mays, one of the appellants, was made a party defendant, under a charge that he, having obtained possession of the notes fraudulently, refused to give them up. Mays appeals the case to this court, claiming to be an innocent purchaser, without notice of the fraud in the title

to the notes as held by Ursula; and his counsel, with much ability, assail the verdict as not being supported by evidence. The evidence is conflicting; to us it might seem that the verdict was against the weight of evidence; but we do not feel authorized to disturb this verdict for this reason.

But as between Melchoir Ximines and Madam Ximines it remains to be seen whether the law will sanction so gross a fraud as that which this woman attempts to practice upon him who was her husband. The common law gives no sanction to postnuptial contracts; equity will sometimes enforce them, but to meet its sanction and approbation they must stand upon the broad principles of equity, and they must appeal to the conscience of the court for sanction. There is no such attribute attached to the transactions of this woman. She was bound to live with her husband and lead a virtuous and faithful life, and this without being hired to do so. But this she did not do, either for love or money, but with all her guilt and sin upon her she has the hardihood to come into a court of justice and ask that court to aid her in swindling the husband she had already dishonored.

But it is objected that Melchoir Ximines has not appealed to this court, and that therefore we cannot give him relief, and it is true he has filed no appeal bond; but Mays has appealed the case to this court, and the case is before us, and we believe our jurisdiction of all the parties is such that we can grant *quasi* relief. We can at least affirm the judgment against Mays, and reverse it and remand it as between the other parties. This we do solely because the facts between Melchoir and Ursula must be settled by the verdict of a jury, and if they should be found as they are stated upon this record, and agreed in the briefs of counsel, then Melchoir Ximines will be entitled to recover the full amount of the notes

against S. S. Smith.   The judgment of the court is there-
fore affirmed as between Ursula Ximines and W. D.
Mays and S. S. Smith, without prejudice to Melchoir
Ximines.

ORDERED ACCORDINGLY.