LARRABEE et al. v. PORTER et al.
(No. 5212.)

(Court of Civil Appeals of Texas. Austin. March 4, 1914. Rehearing Denied April 8, 1914.)

1. WILLS (§ 100*)—JOINT AND MUTUAL WILLS —RIGHT OF HUSBAND AND WIFE TO EXECUTE.

A husband and wife may make a joint and mutual will containing reciprocal obligations.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 238; Dec. Dig. § 100.*]

2. WILLS (§ 188*)—JOINT AND MUTUAL WILLS —REVOCATION.

A joint and mutual will, executed by husband and wife pursuant to a contract between them, which gives to the survivor a life estate in the entire property with remainder to their daughters, is executed on a valid consideration consisting of the reciprocal devise of the one to the other, and where on the death of the wife, acquiescing in the will, the husband probates it and goes into possession, he cannot revoke the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 449; Dec. Dig. § 188.*]

3. WILLS (§ 108*)—JOINT AND MUTUAL WILLS —EXECUTION BY HUSBAND AND WIFE—ACKNOWLEDGMENT BY WIFE.

A joint and mutual will, executed by husband and wife pursuant to a contract between them, which gives to the survivor a life estate in all their property, with remainder to their daughters, is not a conveyance and need not be separately acknowledged by the wife, but merely declares a trust in favor of the children to become effective after the death of the survivor.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 249–258; Dec. Dig. § 108.*]

4. TRUSTS (§§ 17, 18*)—CREATION OF TRUSTS— NECESSITY OF WRITING.

The statute of frauds does not require that trusts shall be evidenced by writing, but they may be established by parol.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 15–24; Dec. Dig. §§ 17, 18.*]

5. WILLS (§ 100*)—JOINT AND MUTUAL WILLS —VALIDITY.

A joint and mutual will, executed by husband and wife in consummation of an oral agree-

ment between them for the equitable disposition of their property, which gives to the survivor their property for life with remainder to their daughters, is not void if regarded as a contract between husband and wife, but is enforceable on principles of equity.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 238; Dec. Dig. § 100.*]

6. APPEAL AND ERROR (§ 173*)—DEFENSES NOT URGED BELOW—STATUTE OF FRAUDS.

The statute of frauds is not available as a defense when not invoked in the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1079–1089, 1091–1093, 1095–1098, 1101–1120; Dec. Dig. § 173.*]

7. FRAUDS, STATUTE OF (§ 129*)—PART PERFORMANCE OF PAROL CONTRACT.

A joint and mutual will, executed by husband and wife and a deed executed by them as a part of the same transaction, in consummation of a parol contract between them for the equitable disposition of their property between their children, constitute part performance of the parol agreement to take it out of the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 287–292, 303, 306–308, 311, 314, 318–320, 322, 325, 326; Dec. Dig. § 129.*]

8. WILLS (§ 100*)—JOINT AND MUTUAL WILLS —REVOCATION—ESTOPPEL.

Where a joint and mutual will executed by husband and wife, which gave to the survivor their property for life with remainder to their daughters, was executed in consummation of a parol agreement between them to make an equitable disposition of their property to their children, and the husband, on the death of the wife, probated the will and took possession of the property devised thereby, he was estopped from thereafter disregarding the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 238; Dec. Dig. § 100.*]

9. HUSBAND AND WIFE (§ 31*)—MARRIAGE AGREEMENTS—CONSTRUCTION—WIFE AS BONA FIDE PURCHASER—NOTICE.

Where a joint and mutual will executed by husband and wife was probated by the husband on the death of the wife, and he took possession of the property under the will, which devised the entire property of the parties to the survivor for life with remainder to their daughters, a woman subsequently marrying the husband pursuant to an agreement that if she would marry him, keep house, and care for him in his old age, he would convey to her his interest in the estate, was not an innocent purchaser for value without notice and acquired no greater rights against the daughters than the husband had.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 178–195, 883, 884; Dec. Dig. § 31.*]

10. EVIDENCE (§ 171*)—BEST EVIDENCE—PAROL EVIDENCE.

A conveyance not forming the basis of plaintiff's cause of action, but which is merely a collateral matter, may be proved by parol notwithstanding the best evidence rule.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 460, 528; Dec. Dig. § 171.*]

11. APPEAL AND ERROR (§ 1033*)—HARMLESS ERROR—ERRONEOUS INSTRUCTIONS.

Where, in a suit by children to recover real estate as beneficiaries under the will of their deceased father and mother, who executed a joint and mutual will devising all their property to the survivor for life with remainder to the children, brought against the second wife of the father, claiming under a subsequent will and deed, which could not operate to revoke the joint will, the inventory filed by the husband probating the joint will was introduced in evidence and disclosed that lands were scheduled thereunder as the separate property of the first wife, an instruction directing the jury not to consider the inventory as any evidence of interest in the first wife or as any evidence of title in the community estate of the husband and the first wife was not prejudicial to the second wife.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4052–4062; Dec. Dig. § 1033.*]

12. TRIAL (§ 260*)—INSTRUCTIONS — REFUSAL TO GIVE INSTRUCTIONS COVERED BY THE CHARGE GIVEN.

It is not error to refuse a charge covered by the charge given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

13. HUSBAND AND WIFE (§ 235*)—TRIAL— FINDINGS.

Where the jury, in response to the question whether a husband gave to his wife a note as a gift or to reimburse her for money of hers that had been used, found that it was to reimburse her for her money and land used, the finding was a direct finding that the entire note was turned over to her to reimburse her for her land and money used, and not that it was intended to reimburse her only to the extent of her property used by him.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 589, 849–852, 982; Dec. Dig. § 235.*]

Appeal from District Court, Brown County; John W. Goodwin, Judge.

Action by Rosa B. Porter and others against Laura B. Larrabee and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

T. C. Wilkinson, of Brownwood, and W. F. Ramsey and C. L. Black, both of Austin, for appellants. Harrison & Wayman, of Brownwood, for appellees.

Statement of the Case.

RICE, J. G. W. Larrabee and family, consisting of his wife, Ann Larrabee, one son and five daughters, emigrated from Ohio to Texas about 1876, settling near Hillsboro, in Hill county, where the wife then owned in her own right a half interest in about 620 acres of land out of the Ensworth surveys as well as another tract, adjoining which they purchased 320 acres more. Upon this last tract and part of the 620-acre tract they moved and made their home for many years. The husband before coming to Texas owned a small tract containing about 40 acres, but only a small part of which was in cultivation, and a small amount of personal property, but the record fails to show its value, nor is it shown whether such land was the separate or community property of Larrabee and his wife. The wife owned, besides the Hill county lands, a half interest in other lands in Texas, 109½ acres of which were situated in Ellis and 530 acres in Red River county. From time to time her lands were gradually sold, and the proceeds appear to have been mostly used in making improvements upon the home tract, paying off

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

incumbrances thereon, including purchase-money notes, and for other purposes. The family all lived together until the marriage of their son, which occurred prior to 1887. After the son's marriage, it is shown that Larrabee and his wife, after repeated consultation over the matter between themselves and their children, concluded that it was best that they should make a joint and mutual will, containing reciprocal provisions, whereby they should reserve to the survivor a life estate in all their property, with remainder to their daughters; but at the same time it was agreed that they should convey 100 acres of land to their son in full satisfaction of his interest in their estate, it being understood that he should relinquish all of his interest in the balance of their estate to his sisters, and execute a deed of acquittance to them therefor.

In pursuance of said agreement, G. W. Larrabee and his wife, Ann Larrabee, on the 21st of February, 1887, duly executed their joint and mutual will, by which they gave to the survivor a life estate in all their property, both joint and several, with remainder, share and share alike, to their five daughters, Allie, Lillie, Rosa, Oral, and Mertie Larrabee; with a further provision therein that all persons who under the laws of descent and distribution of this state might claim, demand, or have any title or interest in any part or parcel of the property of which they might die possessed, were thereby cut off and barred from said claim or demand forever. Simultaneously with the execution of said will, they likewise conveyed 100 acres off of the Ensworth survey (the separate property of the wife) to their son J. H. Larrabee, who at the same time, in consideration thereof, joined by his wife, Retta Larrabee, duly relinquished all of his interest to his sisters in the estate of his mother and father, in accordance with said agreement and understanding. Subsequently, the family, desiring to remove from Hill county, ascertained that they could purchase 800 acres of land in Brown county for what they conceived to be a bargain; whereupon it was agreed between Larrabee and his wife that said land should be purchased for a home. Prior to this, however, it appears that all of their land in Hill county had been sold to Pattie and Brockington for the sum of $9,550, they paying $500 in cash, assuming to pay off an obligation against the land for $500, and executing their note for the balance $8,550, secured by a vendor's lien on said property, which note was made payable to Mrs. Ann Larrabee; the evidence disclosing that this was done in order to reimburse her for her separate estate formerly used by her husband. Afterwards this note was collected by G. W. Larrabee, and, in pursuance of said agreement, the proceeds turned over to his wife, Ann Larrabee, with the understanding and statement that the same was to be her separate property, and with which said Brown county land was paid for; the title, however, being taken in the name of the husband, he having stated, when his wife requested that the title be made to her, that it would make no difference, since the will provided that she was to have everything upon his death. After this purchase the father, mother, and daughters removed from Hill to Brown county, and thereafter made their home upon said land.

On July 14, 1894, Mrs. Larrabee died without revoking or making any effort to revoke said will, and G. W. Larrabee thereafter probated the same and continued to occupy said home and lands, using it and enjoying the rents thereof to the exclusion of his children. About two years after her death, to wit, on the 11th day of March, 1896, he married Laura B. Teveron, with whom he lived as his wife until his death, which occurred on the ―――― day of March, 1911, using and occupying said premises as their home. Before this last marriage, however, it was agreed and understood between himself and his said wife that she would marry him in consideration of his giving to her by deed or will his entire interest in his estate, which it seems was to have been done prior to the marriage. In accordance with this understanding, the said G. W. Larrabee, some two days after his marriage to said Laura B. Teveron, to wit, on the 13th day of March, 1896, duly executed his second will, as well as a warranty deed and bill of sale to appellant, whereby in said first two instruments he gave to his said wife Laura B. Larrabee all of his property, both real and personal, of whatever kind or nature, owned or possessed by him, including the farm on which he then resided (it being what was known as the Cason or Larrabee place), together with all household and kitchen furniture, farming implements, and live stock, stating in said will that it was intended thereby to expressly revoke the former will made by him to his first wife on the 21st of February, 1887, appointing said second wife independent executrix, and directing that no bond or security be required of her. By said bill of sale he conveyed all of his personal property to her. This last will was propounded for probate in the county court of Brown county by Mrs. Laura B. Larrabee on the 27th of April, 1911. Thereafter, on the 29th of May, the appellees Rosa B. Porter and husband, R. S. Porter; Mertie O. Seward and husband, E. P. Seward; Allie Williams and husband, N. C. Williams; Oral J. Hubbard and husband, W. V. Hubbard; W. H. Fields; and Alix Nicks (who was the grandchild of Geo. W. and Ann Larrabee, deceased) by her next friend, R. S. Porter—filed their opposition to said application, asking that the first will be probated as the last will of G. W. Larrabee, deceased. The grounds upon which their opposition to the last, and their application for

the probate of the first, will, were based were the facts above outlined, whereby they claim that their father, G. W. Larrabee, and appellant were and are estopped to question or deny the validity or binding effect of said first will, and that he was without power to revoke the same.

Appellant excepted to appellees' contest and application to probate the first will, on the ground that said court had no jurisdiction to determine whether or not said joint and mutual will involved a contract, but had jurisdiction only to determine whether it had been revoked, which exception was sustained and their contest and application dismissed, and the application of appellant to probate the second will was granted, from which judgment an appeal was prosecuted by appellees to the district court.

Pending the proceeding in the county court, L. J. Mauldin and J. H. Hutchison were appointed temporary administrators of the estate of G. W. Larrabee, deceased, and qualified as such. On October 12, 1911, the above-named appellees filed another suit in the district court against appellant and the administrators of said estate, which contained four counts. The first was in the ordinary form of trespass to try title to recover the farm of 800 acres, and a lot situated in the town of Bangs, constituting all of the realty belonging to the estates, separate and community of G. W. Larrabee and his two wives, and also sought to recover all the personal property and money belonging to said estates. The second count presented the same matters as those contained in appellees' contest and application in the county court, setting up the facts above set forth with reference to the contract between G. W. and Ann Larrabee, the conveyance to their son J. H. of said 100 acres, his renunciation of all further claims on their estate, together with his relinquishment of all his right, title, and interest to appellees, the subsequent removal of G. W. and Ann Larrabee to Brown county, and the purchase of the Cason place with the proceeds of the sale of the Hill county lands; that by reason of all of which facts it was claimed by them that said first will was a binding and irrevocable contract, and that all of the property then owned or subsequently acquired by G. W. and Ann Larrabee became impressed with a trust in favor of appellees, and that upon the death of said Ann Larrabee they became its owners, subject only to the life estate of their father in said property, secured to him by said joint and reciprocal will. The third count alleged that on June 11, 1887, Ann Larrabee was the owner in her own separate right of all the A. S. Ensworth 480-acre survey, and the Thos. Reeves 320-acre survey in Hill county; or, if not such owner, that the community estate of herself and G. W. Larrabee was indebted to her for the proceeds of the sale of other portions of her separate estate, used in paying for, im-

proving, and discharging liens upon said surveys; that on that day they sold said lands, taking in part payment therefor a note for $8,550, payable to Ann Larrabee or order, due November 1, 1887, which was secured by the usual lien; that said note was made payable to her at the direction of G. W. Larrabee and delivered to her by him as a gift to be her separate property, or, if not as a gift, then in payment of said obligations due her by their community estate; that said note was paid about October 16, 1888, and its proceeds used by G. W. Larrabee in paying for the land in Brown county, known as the Cason place; that, by reason of these facts, said lands, excepting the lot in Bangs, became the property of appellees, subject alone to the life estate of their father. The fourth count recites the fact that G. W. Larrabee, after the death of Ann Larrabee, made a will in favor of Laura B., his second wife, by which he attempted to revoke the joint and reciprocal will, and under which, in connection with certain deeds in writing made by him to her, she is claiming all of his estate. Further alleging that if they are not entitled, by reason of said joint and mutual will, to hold the estate of G. W. Larrabee, it is because of his having made the second will, deed, etc., in favor of Laura B. and his consequent revocation and breach of the joint and mutual will and contract; and praying that in case they are held not entitled to recover said property as the separate property of Ann Larrabee, and that the will and deed in favor of Laura B. are effective to revoke said joint and mutual will, that they have judgment for damages for the value of G. W. Larrabee's interest in all the property in his possession at the time of his death, alleged to be of the value of $35,000.

Appellant, answering, set up the fact that she had agreed to marry Geo. W. Larrabee and care for him in his old age, in consideration of the fact that he would convey all of his property to her; that this was brought about on account of the failure of appellees to live with and care for their father, from whom they had been estranged; and that, in consequence of her said marriage, said George W. Larrabee, in pursuance of his agreement, did make said second will, devising to her all of his property, and revoking the first will, and likewise conveyed to her by general warranty deed said Cason place, as well as all his community interest in the G. W. Larrabee and Ann Larrabee estate of whatsoever kind and nature, and likewise executed a bill of sale to her, conveying all of his personal property of whatsoever kind or nature, including his live stock, farming implements, household and kitchen furniture, all of which papers were duly executed and delivered to her by him; that, by reason of her marriage and the fulfillment of her agreement, she became the owner and was entitled to the possession of

said property, as well as an undivided one-half interest in and to all of said lands and tenements described in appellees' petition

Appellees, by supplemental petition, urged several exceptions thereto, which were overruled, and among other things pleaded notice on the part of appellant of appellees' alleged rights at the time of appellant's marriage with their father; and also that said contract was in violation of the statute of frauds. The defendants Mauldin and Hutchison pleaded the facts showing their right to the possession and management of said property in controversy, and gave an account of their stewardship as temporary administrators.

On January 26, 1912, the case appealed from the county court and the case filed in the district court were consolidated by agreement, and the court sustained appellant's general and special exceptions to the opposition of appellees to her application to probate the last will and their application to probate the first will.

A jury trial, upon special issues submitted, resulted in findings upon which appellees asked judgment for the 800 acres of land rents thereon collected since the death of their father and for one-half of all personal property; the appellant asked for judgment for the lot in the town of Bangs and all rents collected on it since the death of G. W. Larrabee, for one-half of the 800 acres, for one-half of the rents collected thereon since the death of her husband, and for all the other personal property. And the court, upon findings by the jury in favor of appellees upon the material issues submitted in their behalf, rendered judgment for them for said 800 acres of land; for $1,369.29, as rents collected thereon since the death of G. W. Larrabee, less taxes and expenses; for one-half of certain items of personal property still on hand, and also for $865.85, being one-half the money on hand and collections of notes on hand, as well as of personal property on hand at the time of the death of G. W. Larrabee, less certain expenses. The remaining property was adjudged to appellant Laura B. Larrabee, and the will in her favor was probated and admitted to record, from which judgment Laura B. Larrabee has appealed.

The above outline of the pleadings is taken from the statement thereof contained in appellant's brief, which is concurred in by appellees.

## Opinion.

By the first five assignments of error it is in effect urged that the court erred in rendering judgment for appellees for the entire 800 acres of land, known as the Cason place, together with the revenues thereof since the death of G. W. Larrabee, and for one-half of the personal property involved in the suit, and for one-half of the money so involved, on hand at the date of his death;

and in not rendering judgment for appellant for one-half of said land and the rents thereof, and for all of the personal property, as well as for all of the money on hand at the time of his death; insisting by her several propositions thereunder that G. W. Larrabee, by reason of the execution of his last will, the warranty deed, and bill of sale, all of date March 13, 1896, by which he gave, granted, and conveyed to her all of his property and estate, revoked and abrogated the joint will made by him and his first wife, so far as his own property and estate was concerned; and that this is true, notwithstanding the contention on the part of appellees that the joint and mutual will of G. W. and Ann Larrabee was a contract, or made in pursuance of one, whereby it was irrevocable and enforceable against his estate, because she asserts (a) that Ann Larrabee, one of the parties to such will, was a married woman at the time of its execution, and there was no certificate of the proper officer, or other evidence, as to her privy examination as to its contents, or its execution, as required by law; (b) because her husband, G. W. Larrabee, being the party of the other part in said instrument, could not join her in its execution in the sense contemplated by the statute; (c) because Ann Larrabee was at the time of the execution of said instrument a married woman, and the same has no reference to matters over which she had power to contract; (d) because it appears that the contract, if any there was, in pursuance of which said will was made, or upon which it was founded, was in parol, and consequently not in compliance with the statute of frauds; (e) because it appears that the contract, if any there was, in pursuance of which said will was made, or upon which it was founded, was without any legal or sufficient consideration.

[1] There seems to be no question but that husband and wife can make joint and mutual wills, containing reciprocal obligations; and with reference to their revocation the rule seems to be, as adduced from the authorities, that such will is "revocable by the testator at any time prior to his death, and this is so though he survives the other testator, provided he takes no advantage under the other will. While no legal obligation not to revoke is created by the mere execution of mutual wills, yet if the wills are executed pursuant to a contract, and either testator revokes without notice, the other may compel a specific performance of the contract; or, in case a specific performance is impossible, may recover damages for the breach of the contract." See 30 Am. & Eng. Ency. Law, p. 621.

In Theobold on Wills, p. 16, it is said: "It seems that two persons may agree to make mutual wills which remain revocable during their joint lives by either with such notice to the other as may enable him to alter his will also, but becomes irrevocable after the

death of one of them, if the survivor takes advantage of the provisions made by the other"—citing numerous cases in support of the text. See, also, the following cases: Frazier v. Patterson, 243 Ill. 80, 90 N. E. 216, 27 L. R. A. (N. S.) 508, 17 Ann. Cas. 1003; Deseumeur v. Rondel, 76 N. J. Eq. 394, 74 Atl. 703; Bower v. Daniel, 198 Mo. 289, 95 S. W. 347; Baker v. Syfritt, 147 Iowa, 49, 125 N. W. 998; Rastetter v. Hoenninger, 151 App. Div. 853, 136 N. Y. Sup. 961; Dufour v. Pariera, 1 Dick. 419; Brown v. Webster, 90 Neb. 591, 134 N. W. 185, 37 L. R. A. (N. S.) 1196; Prince v. Prince, 64 Wash. 552, 117 Pac. 255; Robertson v. Robertson, 94 Miss. 645, 47 South. 675, 136 Am. St. Rep. 589, and note 592–605; Bolman v. Overall, 80 Ala. 451, 2 South. 624, 60 Am. Rep. 107.

In Frazier v. Patterson, supra, where husband and wife made a joint and mutual will, devising a life estate in their property to the survivor, with remainder to their daughter during her natural life and after her death to her children; and after the death of the husband the will was filed by the survivor for probate, which was granted, and she entered upon and took possession of said estate, using and enjoying the benefits thereof, to the exclusion of the heirs of the husband until the date of her death, her daughter having died prior thereto, it was held that she could not make different disposition of the property by a subsequent will attempting to revoke the first one; the court, among other things, saying: "Mutual wills —that is, where two persons execute wills reciprocal in their provisions but separate instruments—may or may not be revocable at the pleasure of either party, according to the circumstances and understanding upon which they were executed. To deprive either party of the right to revoke such mutual will it is necessary to prove, by clear and satisfactory evidence, that such wills were executed in pursuance of a contract or a compact between the parties, and that each is a consideration for the other; and, even in cases where mutual wills have been executed in pursuance to a compact or agreement between the parties, the law appears to be well settled that either party may, during the lifetime of both, withdraw from the compact and revoke the will as to him. A joint and mutual will is revocable during the joint lives by either party, so far as relates to his own disposition, upon giving notice to the other; but it becomes irrevocable after death of one of them if the survivor takes advantage of the provisions made by the other"—citing authorities. "When mutual or joint wills first came up for consideration, the courts of England, both common-law and spiritual, pronounced against them, and the same unfavorable position was taken by some of the earlier American cases; but the later and better opinions in both countries now sustain such wills where they have been executed with the necessary formality and have not been revoked by some instrument. Schouler on Wills, 456, and cases there cited. The leading case in England on this subject is Dufour v. Pariera, supra. In that case it was held that a joint and mutual will might be revoked by both jointly, or that it might be revoked separately, provided the party intending it had given notice to the other of such revocation, but that neither of them could, during their joint lives, revoke it secretly, nor could it be done by the survivor after the death of the other; that such wills constituted a mutual contract between the parties which could not be rescinded by the survivor after the death of one, on the theory that the first that dies carries his part of the contract into execution. In such case the courts will not permit the other party to afterwards break the contract. The doctrine of this case has been approved in a number of well-considered cases in this country. Allen v. Boomer, 82 Wis. 364, 52 N. W. 426; Edson v. Parsons, 155 N. Y. 555, 50 N. E. 265; Carmichael v. Carmichael, 72 Mich. 76, 40 N. W. 173, 1 L. R. A. 596, 16 Am. St. Rep. 528; Bower v. Daniel, 198 Mo. 289, 95 S. W. 347."

In Edson v. Parsons, supra, it is said: "I fully concede that there is no reason in law, nor any public policy, which stands in the way of parties agreeing between themselves to execute mutual and reciprocal wills; which, though remaining revocable upon notice being given by either of an intention to revoke, become, upon the death of one, fixed obligations; of which equity will assume the enforcement, if attempted to be impaired by subsequent testamentary provisions on the part of the survivor. The proposition is one which may be regarded as having been accepted generally"—citing Jarmon on Wills, p. 27; 2 Story's Eq. Jur. § 785; Schouler on Wills, 454; Lord Walpole's Case, 3 Ves. 402. "A court of equity would, in such event, proceed upon the ground that the survivor was bound, not merely in honor, but by his agreement and by the acceptance of the benefit, which that agreement procured for him. In such a case, obviously, no remedy at law would be adequate to the party, in whose interest, and for whose ultimate advantage, the testamentary agreement had been entered into. Therefore equity would perform its high function of supplying the relief, which the rules of law are not sufficiently elastic to comprehend; and recognizing the obligation, which, in conscience and in honor, rested upon the surviving party, would decree a specific performance of the testamentary agreement, by compelling those persons, into whose possession the property affected may have come, to account for and deliver it over to the complainant, for being impressed with a trust in his favor."

In Baker v. Syfritt, supra, it is said: "Coming a step nearer to the case in hand, we see no good reason why husband and wife may not agree to unite their separate estates in

the creation of a trust for the benefit of a third person, who shall come into the legal title and right of possession upon the death of the survivor. If to that end they execute a joint instrument, clearly expressing their purpose, then, whether it be called a contract, compact, will, or conveyance, we think it should be treated as a relinquishment of dower right; or, at worst, when the maker has died without attempting to revoke it, the other should be held estopped to set up any right which tends in whole or part to the defeat of the common purpose. A contract is none the less a contract because it contains provisions which are testamentary in character; nor is a will any less a will, if properly executed, because it embodies contractual features"—citing Carmichael v. Carmichael, supra, and Schneringer v. Schneringer, 81 Neb. 661, 116 N. W. 491.

In Underhill on the Law of Wills, p. 20, it is said: "If two testators, who have united in the execution of a mutual will, have devised their property to each other, so that the devises form a mutual consideration, neither, after the death of the other, and the probate of the will as to his property, is at liberty, after accepting the benefit conferred, to repudiate the contract to the injury of the heirs or next of kin of the testator who predeceased him. The mutual will was made upon condition that the whole shall be but one transaction. If the will is not revoked during the joint lives of the testators, he who dies first has a right to rely upon the promise of the survivor. He has fulfilled his part of the agreement, and it is not just to his representatives to permit a revocation when he has been prevented from revoking his will by reliance upon the other's promise. It is too late for the survivor, after receiving the benefit, to change his mind, because the first will is then irrevocable. It would have been differently framed, or perhaps not made at all, if it had not been for his inducement." In Dufour v. Pariera, supra, it was said: "It is a contract between the parties which cannot be rescinded but by the consent of both. The first that dies carries his part of the contract into execution; will the court afterwards permit the other to break the contract?"

In Brown v. Webster, supra, as shown by the syllabus, "Where a husband and wife possessed of separate estates, orally agree that upon the predecease of either the survivor shall thereupon become the owner of all of the estate, both real and personal, of such decedent, and, at the same time and in pursuance of and for the express purpose of providing a proper method of carrying such agreement into effect, simultaneously execute reciprocal wills, in each of which the other spouse is made sole devisee and legatee, held: That the oral agreement and the execution of the wills constitute a single transaction, that each is an integral part of one contract, and

166 S.W.—26

that such contract cannot be said to rest entirely in parol." It was likewise held in such case that the contract of each was a sufficient consideration for the contract of the other, and that wills thus executed were not ambulatory, and are not revocable by either party to such contract, as long as the other party continues to perform the contract on his or her part. It is further held in the same case that where either party to such contract commits breach of the same by subsequently executing another will, devising his property contrary to the terms of such contract, and dies, that the survivor, upon proof of the continued performance in good faith on his part, would be entitled to specific performance thereof as against the heirs, devisees, legatees, and executors of the decedent.

[2] In the instant case, if the will itself does not imply or import a contract to execute it (which we are inclined to think is the case), yet the evidence is clear, and the jury found that the same was executed by reason of a previous contract between the parties to make it, giving to each a life estate in their entire property, with remainder to their daughters. This will was executed upon a valid consideration, to wit, the reciprocal devise of the one to the other; and subsequent to the death of the wife, who had scrupulously acquiesced in its provisions, the surviving husband probated same, went into possession, and enjoyed the fruits of the entire property to the exclusion of the beneficiaries, his children, until his death, attempting, however, to revoke same during his life by the execution of the second will and deed to his last wife. We think the authorities quoted and cited are ample to sustain us in holding that this could not be done under the circumstances stated, unless one or more of the several contentions made by appellant with reference thereto can be sustained. This will necessitate a discussion of these objections.

[3] The first is that the separate acknowledgment of Ann Larrabee was not taken to said will, and that her husband, G. W. Larrabee, being the other party thereto, could not join in its execution in the sense contemplated and required by the statute. It is unquestionably true that, if this had been a conveyance instead of a will, this contention would be well taken, and the conveyance void under the statute and authorities cited by appellant; but such is not the case. The instrument merely declares a trust in favor of the beneficiaries thereunder, to become effective after the death of the survivor. See Baker v. Syfritt, supra; Best v. Gralapp, 69 Neb. 811, 96 N. W. 641, 99 N. W. 837, 5 Ann. Cas. 491, and cases there cited. No conveyance was necessary to create this trust; the title does not depart from the makers. As the nature and effect of a transaction of this character is that the legal title remains in the donor for the benefit of the donee, no transfer or as-

signment of the legal title is necessary. 39 Cyc. 66. "If the creator of the trust, by appropriate words or acts, fully and completely constitutes himself trustee, no change of possession is necessary, and he may also retain possession of the instrument creating the trust. Where the instrument creating the trust expressly provides that it shall be for the benefit of the grantor during his life, a retention of possession by him is not inconsistent with the trust." 39 Cyc. 77, 248.

[4] The Texas statute of frauds does not require that express or direct trusts shall be evidenced by writing, and it is settled in this state that they may, be established by parol. Brotherton v. Weathersby, 73 Tex. 471, 11 S. W. 505, and cases there cited. This rule is also applicable to trusts in lands. James v. Fulcrod, 5 Tex. 512, 55 Am. Dec. 743.

[5] Neither the will regarded as a contract, nor the oral agreement pursuant thereto and in consideration and consummation of which it was made, were void in the sense contended by appellant, because made by husband and wife. See Bradshaw v. Mayfield, 18 Tex. 21; Kindrick v. Taylor, 27 Tex. 695; Ximines v. Smith, 39 Tex. 52; Pearce v. Jackson, 61 Tex. 646; Rains v. Wheeler, 76 Tex. 390, 13 S. W. 324; Proetzel v. Schroeder, 83 Tex. 687, 19 S. W. 292; Sparks v. Taylor, 99 Tex. 411, 90 S. W. 485, 6 L. R. A. (N. S.) 381; Levy v. Mitchell, 52 Tex. Civ. App. 189, 114 S. W. 172; McClintic v. Midland Grocery Co. (Sup.) 154 S. W. 1157; Speer on Married Women, § 49; 21 Cyc. 1663.

In Ximines v. Smith, supra, it is said: "The common law gives no sanction to postnuptial contracts; equity will sometimes enforce them, but to meet its sanction and approbation they must stand upon the broad principles of equity, and they must appeal to the conscience of the court for sanction."

In Pearce v. Jackson, supra, it is said: "Contracts between husband and wife have been seemingly recognized even in cases in which the separate estate of the wife was affected (citing Kindrick v. Taylor, supra). But it is probably true that transactions between them, whereby the separate estate of the wife is affected, are sustained on grounds other than the mere force of a contract between the husband and the wife."

In Proetzel v. Schroeder, supra, it is said: "Contracts of the class mentioned (postnuptial) did not receive the sanction of the common law, but were in some cases enforced by the courts of chancery, 'when they stood upon principles of equity, and appealed to the conscience of the court.' Ximines v. Smith, 39 Tex. 52. For the convenience and interest of families, they have been enforced, when fairly and honestly made. 'When feigned or inequitable, they should be defeated.' The comparative value of the estate conveyed to the wife by the husband, with that realized by her, will be considered in determining its validity. 1 Bishop on Married Women, §§ 724, 725, note 4, p. 274."

In Sparks v. Taylor, supra, Mr. Chief Justice Brown says: "The cases cited, as well as others which might be referred to, establish as the law in this state these propositions: (1) The husband may enter into contracts with his wife concerning their property rights; he may purchase land from her and may sell land to her; he may borrow money from her, and he may pay the debt, just as he would to any other creditor; he may become her trustee or agent for the investment of funds which belong to her, the same as he may assume those relations to any other person. In fact, his power to contract with her seems to be limited only by her incapacity to convey land to him because of the fact that he cannot join her in the conveyances. (2) A married woman may, when joined by her husband, sell or mortgage her separate property; she may with her separate funds buy real or personal property from her husband or another which will be her separate estate ; she may borrow money, and, by mortgage, bind her separate estate for its payment, or she may make her separate property surety for her husband's debt or for the debt of a third person with her husband's concurrence. Thus it will be seen that the power of the husband and wife to contract with reference to their property rights is ample to sustain this transaction,. and we can see no legal obstacle to the making of such contract in Texas."

In McClintic v. Midland Grocery & Dry Goods Co., supra, it is said: "Mrs. Skeen and J. C. Skeen [husband and wife] had with McClintic an understanding that he was to furnish the money to cover all expenses and pay section 44 out, and the wife and husband had an understanding between themselves that the land should belong to her individually and to her children." The court, in passing on the question as to whether said property was separate or community, said: "Over against said presumption that said section 44 was community property are these 'controlling facts': (1) Section 44 was so purchased in the name of the wife, and the husband joined her in executing the obligation to the state for deferred payments thereon, all pursuant to said agreement between them that the land should belong to her."

We do not think it was necessary that the will should have been privily acknowledged by the wife, under the circumstances surrounding this case.

[6, 7] Nor is the statute of frauds available to appellant, because, first, that defense was waived, never having been invoked in any manner in the trial court. Besides, this will and the other instruments executed with it and as parts of the same transaction showed a contract in writing, or that they were the consummation of the previous parol agreement to make them; and the undisputed evidence shows such part performance as takes the case out of the statute. See League v. Davis, 53 Tex. 9; International Harvester

Co. v. Campbell, 43 Tex. Civ. App. 421, 96 S. W. 98–99; Carmichael v. Carmichael, supra; Bird v. Pope, 73 Mich. 483, 41 N. W. 514; Johnson v. Hubbell, 10 N. J. Eq. 332, 66 Am. Dec. 773; Turnipseed v. Sirrine, 57 S. C. 559, 35 S. E. 757, 76 Am. St. Rep. 580; Kofka v. Rosicky, 41 Neb. 328, 59 N. W. 788, 25 L. R. A. 207, 43 Am. St. Rep. 685; Best v. Gralapp, supra; 39 Cyc. 52, 28–30, 41–43.

[8] Appellees insist that, notwithstanding such will at its inception was revocable, still, where the party laboring under the disability, as the wife in this case, has fully performed the agreement, and the other has received and enjoyed the benefits, he cannot avoid his obligations under it, even though the disability was such as to render the agreement at its inception ineffectual as a binding and mutually enforceable contract. See Railway Co. v. Robards, 60 Tex. 545, 48 Am. Rep. 268; Williams v. Graves, 7 Tex. Civ. App. 356, 26 S. W. 334; Yerkes v. Richards, 153 Pa. 646, 26 Atl. 221, 34 Am. St. Rep. 721; Howe v. Watson, 179 Mass. 30–40, 60 N. E. 415; Holmes v. Holmes, 107 Ky. 163, 53 S. W. 29, 92 Am. St. Rep. 345; Rose v. Ry. Co., 31 Tex. 59–61; Williams v. Rogan, 59 Tex. 440; Taber v. Dallas, 101 Tex. 241, 106 S. W. 332; Turley v. Thomas, 31 Nev. 181, 101 Pac. 568, 135 Am. St. Rep. 682–687; Richards v. Doyle, 36 Ohio St. 37, 38 Am. Rep. 550; Louisville, etc., Ry. Co. v. Coyle, 123 Ky. 854, 97 S. W. 772, 99 S. W. 237, 8 L. R. A. (N. S.) 433, 124 Am. St. Rep. 385, 386, and note; 36 Cyc. 629, 631, and note 49; 9 Cyc. 333 et seq.; 26 Am. & Eng. Ency. Law, 100; 3 Page on Contracts, § 1618, and authorities therein cited; 2 Page on Contracts, § 936; 2 Beach on Contracts, §§ 889, 890.

The will upon its face, we think, imported an agreement between the parties to consummate it, and it is shown by evidence aliunde that it was made pursuant to and in consummation of the family agreement, for the purpose of making an equitable distribution of their estate after the termination of the life estate to the survivor, the conditions of which were observed by both until after the death of the wife, subsequent to which the acts of the husband in probating the will, taking possession of and enjoying the property thereunder to the exclusion of his children, shows such performance as would take the case out of the statute; and, as said in Howe v. Watson, supra, "We cannot see why, on principle, an actual performance is not as good as an obligation to perform." "If she has fully performed her part, all objection on the ground of mutuality in the remedy has disappeared." 36 Cyc. 629. And it is said in 26 Am. & Eng. Ency. Law, 100: "But where a contract has been fully performed by a married woman, the other party cannot defeat performance on the ground that performance of the contract could not originally have been compelled as against the obligee." This disability of the married woman must be held to inure to her benefit, and it was not contemplated that it was created for the benefit of those who contract with her. Holmes v. Holmes, supra.

In Railway v. Robards, supra, the court says: "It is claimed that Mrs. Cain was a married woman at the time of its execution, and, as it was not privily acknowledged by her, that no recovery can be had for a failure to perform upon the part of the company." After stating the contentions of the company, the court continues: "But in this case it is not necessary to express an authoritative opinion upon either of these points. Nor is it thought necessary to determine the scope of the power conferred by the statute upon the husband in the management of the wife's separate property. For both from the evidence and finding of the court it appears that appellees had performed their part of the contract. Then it would seem to follow that, as the company had received the benefit of a performance upon the part of Mrs. Cain, it would not be hard to assert her coverture as a defense to the action and as justification for a refusal on its part to perform the contract. Any other doctrine would result in converting a rule of protection into an engine of destruction. It is for the protection of married women that the rule of inability to contract exists, and not for those who, knowing of the coverture, contract with them, and, after securing the benefits of a performance on their part would refuse performance on the ground of that coverture. In cases of specific performance of contracts, under some circumstances, the want of mutuality in the contract may be waived by the conduct of the person against whom the contract could not originally have been enforced. And it is said that 'where, from the relation of the parties to one another, the contract is originally binding on the one and not on the other, the latter may by suit waive the want of mutuality and enforce a specific performance of the contract.' Fry on Spec. Perf. 201. Here the company has received the benefit of a performance, that is, the consideration for its own promises, and therefore has no grounds for a suit against appellees, for they have already voluntarily performed their stipulations."

In Leon County v. Vann, 86 Tex. 707, 27 S. W. 258, the court said: "Having received the benefit of the contract, he is estopped to deny its validity." In Pryor v. Pendleton, 92 Tex. 388, 49 S. W. 212, the court, on rehearing, applying the doctrine above announced to one taking under a will, said: "The rule of law laid down in the opinion is correct, and, when applied to the true facts of the case, necessarily produces an opposite result and requires us to hold that Kannie Pryor, by accepting property bequeathed to her by the will of her father, which property she would not have received otherwise than

through him, thereby accepted the will and estopped herself to contest any of its provisions." See, also, 16 Cyc. 787–789.

The holding in Wyche v. Clapp, 43 Tex. 543, cited and relied on by appellant, is differentiated from this case in that the facts are not the same. There the wife, who was laboring under disability, survived, and she did not take under the will.

The question here discussed is somewhat similar to that in March v. Huyter, 50 Tex. 243, wherein it was said that: "The case now before the court is not one where there was a mutual agreement to make a will, and which, as intimated in the above case, might not be binding upon the wife as a contract unless separately acknowledged by her, but one in which the will was executed, and, not having been revoked by the wife, was duly admitted to probate as her will after her death. Neither is any question raised here as to how far after her death the instrument became binding upon the husband as a compact in favor of the other beneficiaries under the will. 3 Wash. on Real Prop. (5th Ed.) 503; 1 Red. on Wills, 182; Shumaker v. Schmidt, 44 Ala. 454 [4 Am. Rep. 135]."

In this connection we quote the following pertinent remarks from the brief of appellees' counsel: "The result of the contentions of appellant, as contained in her third proposition and subdivisions 'a,' 'b,' and 'c,' stripped and standing before a court of justice, is utterly repulsive. It is this: A. contracts with B., who is laboring under such disability as to render the contract void, if you like; B. fully performs, A. receiving, retaining, and appropriating the fruits of B.'s performance. B. asks A. to perform. A. says, 'You could not legally bind yourself, and therefore I could not at the inception of the contract have compelled you to perform.' B. answers, 'But I have performed, and you have enjoyed the fruits of the contract.' A. replies, 'I admit that you have done all that the contract required of you to its smallest details, but, because at its inception I could not legally have compelled you to do what you have done of your own accord, I owe you nothing.' Does it lie in A.'s mouth to so answer B.'s request for performance? We think not. He was silent, when in common honesty, if he ever intended to, he should have spoken; he will therefore not now be heard to speak, when in common honesty he should be silent. The parties cannot be placed in statu quo; the deceased mother cannot by this tribunal be resurrected from the dead and be permitted to make such distribution of her property as she would have made had this family settlement never been agreed to and consummated."

We conclude that since the will was contractual, as well as testamentary, under all the facts of this case that the husband was estopped and precluded from disregarding the same, and therefore his attempted revocation was illegal and void.

[9] If, as it seems clear from the authorities, G. W. Larrabee at any time prior to his death, after having probated the will and accepted the benefits thereunder, could not himself have abrogated it, then does appellant stand in any better attitude than he did with reference to this property? We think not. The record discloses that she lived in the same neighborhood with the Larrabees prior to the death of his first wife; that she knew that he had children and that the family had lived upon the Cason place for a number of years, and after Mrs. Larrabee's death appellant continued to live in the same neighborhood. It further appears from the evidence that her marriage with G. W. Larrabee was void of sentiment, and based solely on the proposition made by Larrabee that if she would marry him, keep house for him, and care for him in his old age, that he would will to her his entire interest in said estate. In pursuance of said proposition, and before her acceptance thereof, she sought and procured the aid and assistance of her brother and brother-in-law to represent her in seeing that Larrabee's proposal should be carried into effect before the marriage was consummated; and with this end in view, she, together with her representatives, repaired to Brownwood for the purpose of meeting Larrabee to ascertain if he had made such disposition of his property to her before the marriage. She, as well as these gentlemen, saw and conversed with Larrabee on this occasion and were assured by him that the papers had been prepared in accordance with their agreement, and were ready for their inspection at the courthouse. Relying, however, upon his statement to that effect, they failed to make further investigation and returned home. The marriage was consummated shortly thereafter; but it seems that the will and the deed were not signed until about two days after the marriage when they were delivered by him to her. She thereafter turned them over to him for safe-keeping. Before her marriage the first will had been probated, and was of record in Brown county. The facts within her knowledge, if not sufficient to give her notice of its contents, were certainly sufficient to put her upon inquiry, which if pursued would have developed the true status of affairs, not only with reference to the claim of the children, but also as to the provisions of the first will as well. Is she not estopped now to say that if she had known the facts she would not have entered into the marriage with Larrabee? We think so. See O'Mahoney v. Flanagan, 34 Tex. Civ. App. 244, 78 S. W. 246; Jackson v. Waldstein, 27 S. W. 26. We think the court did not err in submitting the issue as to whether or not the facts were sufficient to put appellant upon notice of appellee's rights; especially is this true in the absence of a request for more specific instructions. We therefore overrule appellant's tenth and eleventh assignments of error. See Moore v. Pierson, 100 Tex. 113,

94 S. W. 1132; York v. Hilger, 84 S. W. 1117. Notwithstanding marriage is a valuable and sufficient consideration to support a contract (6 Am. & Eng. Ency. Law [2d Ed.] 724), yet appellant is not in the attitude of an innocent purchaser for value without notice, and cannot rely upon such doctrine, because she could take no better title under the will than Larrabee himself had.

Irrespective of whether the first will was revoked by the second still, since the verdict of the jury, considered as an entirety, in effect finds that the 800 acres in Brown county, known as the Cason or Larrabee place, was the separate property of Mrs. Ann Larrabee (which finding is supported by the evidence), the judgment of the court awarding the same to appellees is correct and should not be disturbed.

[10] The court did not err in permitting Mrs. Williams to testify, over appellant's objection, that her mother gave to her uncle John C. Campbell her half interest in the Ellis and Red River county lands for his half interest in the Hill county lands, because such conveyances did not form the basis of appellees' cause of action, but were merely collateral matters, to prove which parol evidence was admissible. See Heidenheimer v. Beer, 155 S. W. 355; Railway Co. v. Caldwell, 93 Ark. 286, 124 S. W. 1035; Oaks v. West, 64 S. W. 1033; Dooley v. McEwing, 8 Tex. 306; 2 Elliott on Evid. §§ 1264 and 1442; 17 Cyc. 469; Aycock v. Kimbrough, 71 Tex. 330, 12 S. W. 71, 10 Am. St. Rep. 745; Lecomte v. Toudouze, 82 Tex. 213–214, 17 S. W. 1047, 27 Am. St. Rep. 870.

It is said in 17 Cyc., supra, p. 469, that "evidence relating to a matter which does not form the foundation of the case, but is collateral to the issue, does not properly fall within the best evidence rule, and, although secondary in its character, cannot be excluded on the ground that primary evidence was obtainable."

[11] Appellant introduced in evidence the inventory filed by G. W. Larrabee in the estate of Ann Larrabee, deceased; the court, however, instructed the jury not to consider such inventory as any evidence of interest in Ann Larrabee to the Cason lands, or as any evidence of title to said lands in the community estate of G. W. and Ann Larrabee. This charge is assigned as error. We do not think that appellant has any right to complain of this charge, because it appears from the recitals in said inventory that the Brown county lands were scheduled therein as the separate property of Ann Larrabee, deceased; and it seems that appellees alone could complain of such charge. At any rate, under the circumstances disclosed in the record, the charge, if error, was harmless.

[12] Appellant requested, and the court refused to give the following two charges, the refusal of which is made the basis of the eighth and ninth assignments: "If you find that said note was made payable to Ann Larrabee by order of G. W. Larrabee or was given to her by him, then state if it was so given to her or made payable to her as a gift of the whole note, or only for the purpose of reimbursing her to the extent that he had used her money, if any." (2) "Was the note for $8,550 intended as a gift to her by G. W. Larrabee of said note as an entirety, or was it intended as a gift of only so much thereof as was necessary to repay her for whatever means of hers had been used by G. W. Larrabee, if any?" These two charges were properly refused, because the main charge of the court in submitting this issue was sufficient on this subject.

[13] The jury were asked by it: "Did G. W. Larrabee give to Ann Larrabee the note for $8,550? If so, was it a simple or pure gift, or was it for the purpose of reimbursing her for money of hers that had been used?" The jury returned the following answer to said question: "It was not a gift, but to reimburse Ann Larrabee for her land and money used." This was a direct finding, in our opinion, that the entire note was turned over to her by him to reimburse her for her land and money used, and was evidently so understood by the court and intended by the jury, for which reason we think said assignments should be overruled.

The remaining assignments have been duly considered, but are not regarded as well taken and are overruled.

Before closing we wish to commend the able and exhaustive briefs and argument filed herein by counsel for both sides, who seem to have spared no pains in presenting the authorities sustaining their respective contentions, and from which we have received much benefit in our investigation of the points urged.

Finding no reversible error in the judgment of the trial court, the same is in all respects affirmed.

JENKINS, J., not sitting.