Maddox et al. vs. Rowe.

NOTLEY MADDOX *et al.* plaintiffs in error, *vs.* SHADRACK ROWE, JR., defendant in error.

| 23 | 431 |
| 117 | 96 |
| 23 | 431 |
| 126 | 171 |
| e126 | 773 |

It was verbally agreed between the father and a son, that the son should convey to the father a lot of land, and that in consideration therefor, the father should devise to the son, two other lots of land. The son conveyed his lot to the father; and the father devised his two lots to the son; but the will, by which he did this, had but two witnesses to it, and was therefore void.

*Held,* That the son was entitled to have a specific performance of the contract, from the representatives of the father.

In Equity, in Troup Superior Court. Decision on demurrer, by Judge BULL, at May Term, 1857.

This bill was filed by Shadrack Rowe, Jr., against Notley Maddox and others, heirs at law of Shadrack Rowe, senior, deceased.

The bill in substance, alleges that complainant, one of the sons of Shadrack Rowe, senior, at the request of his father, who was an old man, lived with him for about nineteen years previous to his death, attending to his business, and managing and overseeing his plantation and negroes, and that his father promised to pay and compensate him for his services, by a provision in his last will and testament; and complainant avers that his services were worth one hundred and seventy five dollars per annum.

The bill further states that complainant being the owner of a lot of land in Harris county, which his father desired that a younger son, LaFayette, should have; it was agreed that if complainant would convey said lot of land to his father, for said purpose, that he would, in consideration therefor, devise and give to him in his last will and testament, two other lots which were specified. And in pursuance of this agreement, complainant executed to his father a deed conveying to him said lot.

That on the 4th September, 1850, Shadrack Rowe, senior, made his last will and testament, and in pursuance of said

agreement, therein conveyed the lot which he got from complainant, to his son, LaFayette Rowe, and gave and devised to complainant the two lots, as understood and agreed upon, at the time before stated.    Said will was executed in the presence of two witnesses only, testator being ignorant of the law as to the number of witnesses necessary to a will of real estate.

Said Shadrack Rowe afterwards, in the year 1853, departed this life, leaving said will unrevoked, and prior to his death, but after the execution or making said will, an Act was passed by the Legislature of the State of Georgia, requiring all wills and testaments of personal, as well as of real estate to be attested by three witnesses, and which Act went into effect and operation before the death of said Shadrack Rowe, senior.    That by said will, his father had, in pursuance of their contract, made certain bequests to complainant, intended as a compensation for the long continued services of complainant, rendered in the management of his farm and business, which provision, although inadequate and not equal to the value of his services, complainant was willing to receive and accept as a full discharge or payment thereof, the same being the compensation allowed by his father.

The bill further alleges, that upon presenting said will for probate before the Ordinary, the same was met by caveat from Notley Maddox, and some other of the heirs at law ; and said will was admitted to probate as to the personalty, but rejected as to the real estate; and from the judgment of the Ordinary, the heirs at law have appealed, and the cause is now pending in the Superior Court of Harris county.

The complainant distinctly alleges and charges that all the children and heirs at law of Shadrack Rowe, senior, knew the facts above stated, and that he is, by contract, and for a full and valuable consideration, entitled to the two lots of land; that he paid for them as aforesaid ; that his father wished and endeavored to perform said contract, and died

under the belief that he had secured titles to said lots to complainant.

The bill further states that Notley has applied for letters of administration on the estate of said Shadrack, with the view and intention of distributing the two lots of land claimed by complainant, as a part of the estate of said Shadrack Rowe, senior.

The bill prays that the heirs and distributees of Shadrack Rowe, senior, may be required and decreed to relinquish to complainant their title, as heirs, to said two lots of land, and to perform specifically, said contract. That Maddox and his confederates be enjoined from disturbing the possession of complainant to said land; that they be enjoined from applying for or receiving letters of administration, and that the will thus defectively executed be established as a deed, for a valuable consideration.

The defendants, Notley Maddox and wife, Lydia Harrison, Sarah Turner, and Alcey Foles answered the bill. But the case coming on to be heard, defendants moved to dismiss the bill on a general demurrer, for want of equity. After argument the Court overruled the demurrer and sustained the bill, and counsel for defendants excepted.

RAMSEY & KING, for plaintiffs in error.

B. H. HILL, and MOBLEY & HILL, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

Was Shadrack Rowe, the complainant in the bill, entitled to have a specific performance of his father's promise to devise to him, the two lots of land mentioned in the bill? If he was, there is equity in the bill; and if there is equity in the bill the overruling of the demurrer was right.

It is a general principle, that part performance of a verbal

" contract or sale of land" takes the contract or sale out of the statute of frauds. This principle has been recognized and acted on, by this Court. *Gilmore vs. Johnston et al.* 14 *Ga. R.* 683 ; and see *Sto. Eq.* § 759, *et seq.*

In the present case the "contract" on one side was, that the son should convey a lot of land to the father. And the son, accordingly, conveyed the lot to the father.

Now, unless we allow an "action" of some kind, to be brought upon the "contract," by the son, he will lose this land without recompense, and the father, or his heirs, will gain it without cost. Such a result would amount to a fraud on the son, by the father, or his heirs.

The statute of frauds was not made to be used as the means of perpetrating fraud. It was made for the opposite purpose.

It is necessary, then, to say, that an "action" of some sort, may be brought by the son on this verbal "contract." And there does not seem to be any reason why this action should not be one for a specific performance. The statute will tolerate that, as easily as it will any.

There is also in the present case, this fact: The father made in writing, what he thought was his will, and in that writing, he said, that he gave the two lots of land in controversy, to the son. The contract, on his side was, that he should give these two lots to the son. Here, then, is a *writing* that may serve to help to prove the contract. The case is such, therefore, that it is not left wholly at the mercy of parol evidence. True, this writing was void, as a will, but that did not prevent it from being good, to help to prove the contract. 2 *P. W.* 244. See *Com. Dig. "Chancery,"* 2. *C.* 4.

In this respect, at least, this case differs from *Robson vs. Harwell and wife*, 6 *Ga. R.* 589, and from *Miller and others vs. Cotton and others*, 5 *Ga. R.* 341.

In conclusion, I must say for myself, that I doubt extremely whether this case is not one of those which the statute of frauds expressly excepts from its operation. By the 8th sec-

tion of that statute, it is "provided," "that where any conveyance shall be made of any lands or tenements by which a trust or confidence shall or may arise or result by the implication or construction of law" "then, and in every such case, such trust or confidence shall be of the like force and effect as the same would have been if" the "statute had not been made."

When there is an agreement or contract for the sale of lands, the vendor becomes a *trustee* of the land, for the vendee. This is a principle which will not be denied.

Now this trust thus acquired by the vendee, must be a trust that arises or results "by the implication or construction of law." There is no other way by which, it can get into existence. The contract or agreement of purchase, does not *say* that there shall be this trust.

And in the present case, there was a "conveyance," viz: from the son to the father, and it was by means of that conveyance, that the agreement or contract became one that was binding by the law as the law stood before the time of the statute of frauds. It may, therefore, be said, that this conveyance was that thing "by which" the trust arose or resulted.

If so the trust is one that is expressly excepted from the operation of the statute of frauds, by the statute itself.

Upon the whole we think that the son was entitled to have the contract specifically performed, and therefore, we think that the Court below was right in overruling the demurrer

Judgment affirmed.