| 73 | 483 |
| 92 | 117 |

| 73 | 483 |
| 101 | 416 |

| 78 | 483 |
| 127 | 57 |

CHARLES K. BIRD v. EZRA POPE AND WILLIAM M. JOHNSON.

*Will—Agreement to make particular disposition—Written contract— Parol evidence—Part performance—Fraud.*

1. It is entirely competent for a person to make a valid agreement binding himself to make a particular disposition of his property by his last will and testament. *Carmichael v. Carmichael,* 72 Mich. 76 (head-note 1).

2. Where pursuant to an oral agreement a will and contract were executed, which did not contain all of the arrangements of the parties, the whole agreement may be put in evidence, and the

parties are not confined to the writings which form only a part of it.

8.  Where in consideration of the devise of certain real and personal property the devisee entered into a contract conditioned for the support of the devisor during his life-time, and entered upon its performance, and without default on his part the devisor attempted to cancel the will, and conveyed the land to a third party, in whose hands both papers had been deposited for safe-keeping, and received from him a mortgage conditioned for his support during life, said deed and mortgage are in fraud of the just rights of the devisee, he having acquired rights in the land which cannot be taken away from him by any act of the devisor, and which will at the death of the devisor entitle the devisee to the land by a specific performance of the contract if he continues to perform his said agreement, or tenders a willingness so to do, and which is prevented only by the refusal of the devisor to accept such performance.

Appeal from Lenawee.    (Lane, J.)    Argued January 16 and 17, 1889.    Decided January 25, 1889.

Bill to set aside conveyances for fraud.    Defendants appeal.    Affirmed.    The facts are stated in the opinion.

*Watts & Smith,* for complainant.

*A. L. Millard,* for defendants.

Morse, J.    The defendant Ezra Pope, in 1885, was an old man 75 years of age, without wife or children, owning 40 acres of land in Lenawee county, upon which there were no buildings, and but a few acres cleared. He had but little, if any, other property, save an old log-house which he had reserved, upon another piece of land, at the time he sold the same.    He made an agreement with his nephew, the complainant, that said complainant should take possession of said land, and have the same at his death, if he would provide a home for him and support him until his death.    In furtherance of this agreement Pope executed the following will:

"Be it remembered that I, Ezra Pope, of Ogden township, Lenawee county, Michigan, being of sound mind, and realizing the uncertainty of human life, do make and declare this my last will and testament:

"I give and bequeath to my nephew, Charles K. Bird, of Blissfield, Lenawee county, Michigan, forty acres of land, more or less, described as follows, to wit: The west half of the west half of the north-east quarter of section thirty-two (32), town eight (8) south, of range four (4) east, Lenawee county, Michigan. I also give to Charles K. Bird all the personal property of which I shall die possessed, after the payment of all debts, including funeral expenses. I hereby appoint William Johnson executor of this, my last will.

"In witness whereof I have hereunto signed and sealed this instrument, and published and declared the same as and for my last will, at Blissfield, this 23d day of October, A. D. 1885. EZRA POPE. [L. S.]

"At Blissfield, on this 23d day of October, A. D. 1885, the above-named Ezra Pope signed and sealed this instrument, and published and declared the same as and for his last will; and we in his presence, and at his request, and in the presence of each other, have hereunto subscribed our names as witnesses. WILLIAM D. McCANN.
"WILLIAM B. BARRON."

And he and the complainant also entered into the following contract in writing:

"This contract, made and entered into this 23d day of October, A. D. 1885, by and between Ezra Pope, of Ogden, Lenawee county, Mich., of the first part, and Charles K. Bird, of Blissfield, Lenawee county, Mich., of the second part, witnesseth that, in consideration of the party of the first part having this day made a will giving and bequeathing to the said second party all of his real and personal estate, the said second party agrees to take the party of the first part into his own family, and provide for him in sickness and health, to clothe him, and pay all doctor bills.

"In witness whereof we have hereunto subscribed our names. EZRA POPE. [L. S.]
"CHARLES K. BIRD. [L. S.]"

This will and agreement Pope soon afterwards placed in the hands of the defendant Johnson for safe-keeping.

At the time this agreement was made, it was understood by both Bird and Pope that they would move the old log-house upon the premises; but it was found not practicable to do so, on account of the rottenness of some of its timbers. They obtained permission of the owner of the premises upon which the log-house was standing to live in the same until Bird could build a new house upon the land willed to him by Pope. This was done. The lumber was obtained from logs cut from off the place, and sawed at a mill near by. Bird expended some $300 in build-ing this house, in work and money, over and above the value of the logs taken from the premises. In the sum-mer of 1886 they moved into the new house, which was a small, but comfortable, one. Pope had a room of his own assigned to him therein, in which were a carpet, stove, bed, etc. He finds no fault with this room, except that he wanted a rocking chair. Pope lived here, Bird supporting him, until March, 1887. During this time Bird did a little clearing on the land, and worked it as he pleased. A portion of the time Pope was quite sick, and was nursed and cared for by Bird and his wife, evi-dently to his perfect satisfaction. About the time he was recovering from his illness he went to a justice of the peace to get a deed drawn. The justice not being able to do it, he then called on a notary public, and made a deed to Bird of the land. This deed he also deposited with the defendant Johnson, directing him to deliver it to Bird at his (Pope's) death.

On April 17, 1887, Pope destroyed the deed he had executed to Bird, and drew cancellation lines across the face of the will. He also executed and delivered to the defendant Johnson a warranty deed of the premises, tak-ing back from him a mortgage for $1,200; the condition of the mortgage being that Johnson should support Pope during the life of said Pope. Johnson soon after gave

notice to Bird to vacate the premises, and commenced legal proceedings to eject him therefrom.

The complainant filed his bill in this cause in the circuit court for the county of Lenawee, in chancery, alleging substantially the facts above stated; that under the said agreement he was to move upon and take charge of the land, build a house upon it, and improve it just as if it was his own, occupy and keep it as his home, and take Pope to live with him, where Pope should make his home, and be cared for and supported by complainant; that he faithfully kept and performed the agreement upon his part; that Pope left his house without cause or reason; that the conveyances between Johnson and Pope were in fraud of his rights, which Johnson well knew at the time they were made; avers that, although the summary proceedings to eject him from the land have been discontinued, he is informed and believes, and so charges the fact to be, that such discontinuance was for the purpose of planting an ejectment suit, which the defendants, or one of them, intend to commence at once. He prays that they may be enjoined from so doing, and from conveying or incumbering the land, and that the conveyances between them, the deed and mortgage aforesaid, may be decreed fraudulent and void as against his rights in the premises. A temporary injunction is asked in accordance with the prayer, to be made perpetual on the final hearing.

The defendants answered admitting the execution and deposit of the will and contract. Pope admits that he intended at his death that Bird should have the land if he performed his contract, but denies that he ever gave him control or possession of the land, or ever intended or agreed to do so during his life-time. He claims that Bird violated his contract because he failed to move the old log-house upon the land, by which said house, worth

$200, was lost to Pope; admits making a deed, when Pope was seriously ill and doubtful of recovery, conveying the land to Bird, and the delivery of the same by Pope to Johnson, under the following written instructions:

"Mr. William Johnson,

"*Sir:* You are hereby authorized by me to hold this deed, subject to my call at any time, the same as my last will. If not called for, then, after my death, deliver it to Charles K. Bird.

"*Dated this 30th day of January,* 1886.

"Ezra X̲ Pope."
his
mark.

It is averred in said answer that this deed was made so that, if Bird should satisfactorily care for and support Pope, the complainant might be saved the expense of probating the will.

Pope, in said answer, also denies that Bird properly supported him, and avers that he failed to provide him with proper care, nursing, and medicines when he was ill, and also an easy chair, which he needed, and was obliged to borrow from a neighbor; admits leaving the house of Bird, but avers it was because he was not well treated.

The answer further admits the making and delivery of the conveyances between the defendants, but denies any fraud against the complainant in so doing, and avers their right to execute them; admits that the summary proceedings were abandoned in order to commence eject-ment. The answer also avers that in the latter part of February, 1887, upon being remonstrated with by Pope as to his omissions to perform his agreement, the said Bird told Pope he would leave the premises in the spring, and that would settle the matter; that, acting upon this agreement, Pope made his contract with Johnson, which is evidenced by the deed and mortgage of April 17, 1887.

Proofs were taken in open court, under this issue, before the Honorable Victor H. Lane, circuit judge, who

found that, in the month following the making of the will and contract, Pope moved into the family of Bird, and there resided until March, 1887, during which time he was cared for and supported by Bird in substantial compliance with the contract; that Pope left without just cause, and that Johnson had full knowledge of the will and contract; and that complainant had partly performed the contract when Pope's deed was made to said Johnson. He decreed said deed and the mortgage from Johnson to Pope to be fraudulent and void, and against the just rights of complainant, and annulled the same. It was further ordered and decreed,—

"That by virtue of the will, contract, and part performance thereof by complainant, he has secured rights in and to said lands which said defendant cannot revoke, cancel, or convey away."

Pope and Johnson were enjoined from deeding, conveying, or incumbering the premises in any manner, but the restraint of the decree went no further.

There is not a great deal of conflict in the evidence. The complainant's theory of the case is well supported, not only by the testimony, but by all the facts and circumstances in the case. The intention of Pope, and the agreement of the parties, that Bird should have the land at Pope's death, provided he was supported according to the agreement, are certain and undisputed. So is the fact that, relying upon the will and agreement, Bird put a house on the land, at more or less expense, and did some clearing. Pope insists that the agreement was that the possession and control of the land should remain in him until his death. This may be so, but still the proof shows that from October, 1885, to March, 1887, Bird managed it as if it were his own.

But this is not material. Bird was on the land with

the consent of Pope, and making improvements upon it, in reliance upon the agreement.

We think the evidence shows that he fully performed his part of the contract up to the very moment Pope left his house, and has been at all times ever since willing to live up to his agreement. Pope now complains of insufficient care when he was ill, but his deed, made just at the end of his sickness, shows that this complaint is an after-thought. All the complaint he now makes of his treatment, after such illness, is that Mrs. Bird left the outside door open while she swept, and sometimes raised the buttery window, which made him cold and chilly. He never said anything to Mrs. Bird about the buttery window, nor about the door, except some remarks when he shut it. It is evident from his own testimony that he had no real cause of complaint, and we are satisfied that he was treated with kindness, care, and consideration, and that even his whims were gratified, as far as the means and opportunities of Bird would permit, who was poor, and with no ready money. We see no reason, either in law or equity, why the decree of the court below should not stand, as it is also undisputed that Johnson is not a good-faith holder under his deed.

It is urged by the counsel for the defendants that the contract between the parties must stand on the will and contract, and that no oral evidence can be permitted showing any agreement outside of these two instruments. This is not so. This is not a case where the whole contract was reduced to writing, thus shutting out any oral talk between the parties. Here the agreement was orally made. In pursuance of the agreement, the will was executed, and also the contract. But these were not all of the arrangements between the parties, as both admit in their pleading and in their testimony. In such case the whole agreement may be put in evidence,

and the parties are not confined to the writings which form only a part of it. *Richards v. Fuller,* 37 Mich. 161; *Phelps v. Whitaker,* Id. 72; *Trevidick v. Mumford,* 31 Id. 470; *Sirrine v. Briggs,* Id. 443; *Rowe v. Wright,* 12 Id. 291; *Bowker v. Johnson,* 17 Id. 42; *Facey v. Otis,* 11 Id. 217. The will and contract do not provide where Bird should maintain Pope, except that it should be in his own family; and both are silent as to what should be done with the land during Pope's life. · The agreement as to the working and living upon the land, and the making of improvements thereon, and the possession of the same, rested in parol, and was competent to be received in evidence. Not only was it a part of the transaction, a portion of which was embodied in the making of the will and in the contract, but it did not tend in any way to contradict, vary, or alter these instruments or their meaning.

The court was right in holding, under this agreement as proven, that the conveyances between Johnson and Pope were in fraud of the just rights of the complainant; and the decree might have gone further, in the interest of justice. The defendant Pope could not by revoking his will, and leaving the house of complainant, alter or disturb the effect of the agreement between them when Bird was not at fault, and was willing to perform his contract to the end. There was no fraud in the procuring of the contract or the execution of the will, and there is no claim of any. The will and the contract were dictated by Pope independently of Bird; and everything relating to the taking possession of the land, and the improvements made thereon, including the building of the house, was done with the assent at least of Pope. The only reasons assigned for attempting to destroy the force and effect of the will, which was made in part performance of the agreement between them, are found

to be groundless. Bird, by his performance of the agreement so far, has acquired rights in the land which cannot be taken away from him by any act of Pope; and rights which, if he continues to perform his agreement, or tenders a willingness to do so, which is prevented only by the refusal of Pope to accept such performance, will, at the death of Pope, entitle him to the premises by a specific performance of the contract. | This he may lose by his own wrongful acts hereafter, or by a voluntary abandonment of the land; but Pope is powerless to convey the premises away from him, or to drive him off the land, if Bird performs, or is willing to perform, his contract to the end.

It has been held by this Court that it is entirely competent for a person to make a valid agreement binding himself to make a particular disposition of his property by last will and testament. It was distinctly so decided in a late case before us. See *Carmichael v. Carmichael*, 72 Mich. 76 (40 N. W. Rep. 176), and cases there cited. The case of *Leonardson v. Hulin*, 64 Mich. 1 (31 N. W. Rep. 26), is similar in some respects to the one at bar. In that case, however, we found that Hulin was not capable of destroying his will because of mental incompetency. Here there is no claim that Pope was mentally unsound; but the principle governing the two cases is the same. Relying upon the will, in each case, possession was taken of the premises, and valuable improvements made thereon. We held in *Leonardson v. Hulin*, in affirmance of the decree below, that Leonardson had rights in the property that Hulin could not destroy; and we must also affirm the decree in the court below in this case, which, as in the other, has only the fault that it does not go far enough in the protection of the complainant's rights.

We do not deem it necessary to notice the objections made to the admission in evidence of certain depositions

upon the hearing, because the testimony, without them, clearly and fully supports the conclusion at which we have arrived, and was amply sufficient to warrant the decree in the lower court.

The complainant will recover costs of both courts.

SHERWOOD, C. J., CHAMPLIN and CAMPBELL, JJ., concurred. LONG, J., did not sit.