[No. 14634.  Department Two.  October 15, 1918.]

FRED R. ALEXANDER, *Appellant*, v. ADOLPHUS LEE LEWES
et al., *Respondents*.[1]

SPECIFIC PERFORMANCE (25) — CONTRACTS ENFORCIBLE — CONTRACT
TO DEVISE. Contracts to devise real estate in consideration of an
agreement for life support are personal and will not be specifically
enforced beyond the lifetime of the person to whom the promise
was made, such person having died before the testator.

WILLS (8) — CONTRACT TO DEVISE — VALIDITY. To agree to make
a will is within the realm of contract right and the fairness of the
agreement must be determined by resort to the relations of the
parties and the attending circumstances, and past favors may be
adopted as part of the consideration.

SAME (8-1) — CONTRACTS TO DEVISE — REQUISITES — CONSIDERATION —
EVIDENCE — SUFFICIENCY. Specific performance will be decreed of an
agreement to devise to a son-in-law property worth $12,000 in con-
sideration of life support for the testator, who was 83 years of age,
together with an assignment of the son-in-law's life insurance,
where it was supported by evidence of previous benefits received
which were acknowledged in the will, and was coupled with the
execution of the will and delivery of a contract for support, without
undue influence.

SPECIFIC PERFORMANCE (25) — CONTRACTS TO DEVISE. Inadequacy
of consideration is not a sufficient objection to specific performance
of a contract to devise lands to a son-in-law for life support, since
the testator may, in the absence of fraud, fix upon any lawful con-
sideration sounding in personal service.

EVIDENCE (157) — PAROL EVIDENCE — CONSIDERATION. It is com-
petent to prove by parol that a will was executed in consideration
of a written agreement for life support, although the papers did
not refer one to the other.

WILLS (8-1) — CONTRACTS TO DEVISE — SUBSTANTIAL PERFORMANCE.
It cannot be objected that there was no substantial performance
of an agreement for life support in consideration of a contract
to devise lands, from the fact that, four days after making the
will, the testator voluntarily left and attempted to repudiate the
agreement and revoke the will, and shortly after died, where the
devisee was in no way responsible for testator's breach of the
agreement.

[1]Reported in 175 Pac. 572.

SAME (8-1)—CONTRACTS TO DEVISE—INCIDENTAL RELIEF. In an action to enforce specific performance of a contract to devise lands, heirs to whom the testator devised it cannot be charged with the payment of a mortgage subsequently placed on the land by the testator.

Appeal from a judgment of the superior court for Cowlitz county, Darch, J., entered June 6, 1917, upon findings in favor of the defendants, dismissing an action for specific performance, tried to the court. Reversed.

*Clarence H. Gilbert* and *H. W. Arnold,* for appellant.

*Magill & McKenney,* for respondents.

CHADWICK, J.—This is a suit to enforce specific performance of a contract to devise real property.

Frederick Lee Lewes, then of the age of 74 years, went to live with appellant and his wife, formerly Georgia Lee Lewes, a daughter of Frederick Lee Lewes, in the year 1901, and continued to reside with appellant as a member of his family until August 30, 1913.

At that time, and at the time of the death of Frederick Lee Lewes, he owned three pieces of land in Cowlitz county, Washington, a donation land claim containing 237.56 acres, a place known as "The Homestead," containing 160 acres, and a place known as "Mother's Claim," containing 120 acres. Georgia Lee Lewes Alexander died August 14, 1913; Frederick Lee Lewes died in August, 1915. He was the father of seven children, of whom four, the respondents in this case, survive him.

Appellant alleges in his complaint that there was an understanding between Frederick Lee Lewes and his wife and himself in 1901 that Frederick Lee Lewes should make his home with his daughter and be cared

for by them during his natural lifetime, and in consequence of this service Frederick Lee Lewes would leave to them the south half of the place known as "Donation Land Claim." Without reviewing the testimony offered to sustain this claim, we think the court rightfully held that the contract, if any, is not now capable of specific performance. The daughter, Georgia Alexander, having died before her father, and the rule being that contracts of the kind relied on are personal, specific performance will not be decreed beyond the lifetime of the party to whom the promise is made.

Appellant sets up a second cause of action growing out of the following state of facts. Upon the death of the daughter, Georgia Lee Lewes Alexander, Frederick Lee Lewes, then a member of the household of appellant, being desirous of continuing to make his home with appellant, went with him to the office of an attorney at law and there directed (appellant not being present in the room) that the attorney draw his will. The will provides:

"I give, devise and bequeath to my beloved son-in-law, Fred R. Alexander, the husband of my beloved daughter, Georgia Claudine Lee Alexander, now deceased, and to whom I am greatly indebted for extreme kindness, care and attention, and to whom, as a recognition of this kindness and care to me, I hereby place in the same position as regards my estate as I would place my said deceased daughter had she lived and survived me, to my son, Frederick Archie Lee Lewes, what is known as the donation land claim of my deceased brother, Adolphus Lee Lewes, and designated as Claim No. 38, being part of Section 30, in Township 5, North of Range 1 East of the Willamette Meridian, and Claim No. 50 being parts of sections 24 and 25 in Township 5, North of Range 1 West of the Willamette Meridian, all in Cowlitz county, state of Washington, according to the official plat of survey, and containing 278 acres of land, more or less, the

same to be divided into two equal parts by a line running due east and west; my said son-in-law, Fred R. Alexander, to have the southern portion of the land so divided and my son, Frederick Archie Lee Lewes, to have the northern portion of said land.''

Mr. Lewes expressed his cordial feeling toward appellant and a desire to recompense him for past favors as well as like favors to follow in the future.

Appellant, who had, during the time the will was being prepared, been engaged upon some errand, having returned to the outer office, was called into the room with the attorney and Mr. Lewes and, according to the testimony of the attorney,

''When he had executed the will he said 'I am satisfied with that, it is just the way I wanted it,' and when Alexander was called into the room he said what I have repeated before, told him that—what he had done, or what Alexander had done for him, given him a good home, provided for his wants, and he was perfectly satisfied with his treatment, and that he wanted to remain, wanted him to keep him in his home the remainder of his life, and he spoke it with a great deal of feeling; sometimes put it with tears in his voice. . . . Just before they departed from the office Mr. Lee Lewes stepped up to Mr. Alexander, and put his hand—one hand at least, or both hands, on his shoulder, and spoke about the home that they had given him, and the number of years that he had lived with them, or practically or substantially so, and that he had been a real son to him, and he wanted to continue to live with him as long as he lived. That is in substance the remark he made; he didn't want him to turn him out, he wanted him to keep him—furnish him a home. The old gentleman was very sincere, apparently, about it, and somewhat affected in his tone of voice and in his manner.''

At the same time and as part of the same transaction, the attorney prepared a contract providing for the

future maintenance of a home for the said Frederick Lee Lewes, as follows:

"Know all men by these presents, That I, Fred R. Alexander, for and in consideration of one dollar, love and affection, and other valuable considerations to me paid by Frederick Lee Lewes, my father-in-law, do hereby promise, covenant and agree to and with Frederick Lee Lewes, who is now about 83 years old, that I will provide and maintain a home for him with me during the remainder of his natural life, and to take care of him in health and in sickness, and during any infirmities of old age, it being my purpose and intention to the best of my ability so to do, to maintain a home for him as good and comfortable to him as that given and maintained by his daughter, and my wife, Georgia Claudine Alexander, lately deceased, and I further hereby agree, to make him, Frederick Lee Lewes, beneficiary in my one thousand dollar life insurance policy in the Knights and Ladies of Security, in place of my deceased wife, so that he may receive and enjoy the proceeds of such policy in case he survives me.

"In witness whereof I hereunto set my hand and seal this 26th day of August, 1913.

"Witness, G. W. Allen.        Fred R. Alexander."

Mr. Lewes took possession of the contract. Four days after the execution of this will and contract, Mr. Lewes left the home of his son-in-law and took up his residence with the respondent, Adolphus Lee Lewes. No reason was assigned, nor did appellant know of his going until he had moved away. Appellant testified that he told Adolphus Lee Lewes and a Mrs. Huff, the housekeeper, of the will. This is denied by Adolphus, who insists that the old man came to him voluntarily and under the coercion of no persuasion or duress whatever. But it seems quite certain that respondents knew of the will at the time the deeds hereinafter mentioned were executed. Within a day or two thereafter, Frederick Lee Lewes went to the lawyer, saying that

he wanted to change his will; that he had left Alexander's home; that he had moved in order to keep peace in the family; and that it did not look well for him to live out of the family. The attorney says that Mr. Lewes told him not to tell the boys and not to tell appellant that he had changed his will. A few days before his death, he made deeds conveying all his property to respondents.

The court below denied specific performance upon the second cause of action.

Perhaps the fairest way to state the case of respondent is to quote the views of the lower court as we find them quoted in the briefs:

"Now let us see what rights he had under the second alleged contract:

"Here we have an old man past his eighty-fifth year, whose life expectancy is only two and 77-100 years, agreeing to convey to his son-in-law property of the value of twelve thousand ($12,000) dollars to take care of him in all probability not to exceed two and a half years. An old man who was not estranged from his own children; an old man who had plenty of means to take care of himself and whose children were able and willing to take care of him, and who, three days after making the contract, leaves the home of his son-in-law, for what reason none of us know (as his lips are now silent in death), goes to his son's home and tells him to take to Alexander the contract signed by Alexander, telling him that he did not want it any more. And in face of all this we have Alexander coming and saying that he is entitled to this $12,000 worth of property. Any rights that he might have must be based entirely upon this last contract. Nothing remains of the first contract which would entitle him to a specific performance, he having waived it, if such a contract had ever been made. This contract was also made within a very short time after the death of his daughter, and in all probability the old gentleman's feelings were worked up to that pitch in his dotage, which leaves a question as to whether or not he was really responsible for his

acts. The plaintiff claims that the will recited as a part consideration the treatment that he had received from Alexander and his wife before. I do not take that statement to mean that which the plaintiff intends for it, but rather that it is an acknowledgment merely of a kindness received by the old gentleman from Alexander, and there is no question but that, when Alexander's wife was living, that the old gentleman received the best of treatment at the hands of Alexander and his wife. But that statement in the will was merely an acknowledgment of the kindness, as any of us in speaking of the kindness that we might have received from another party.

"Any services that Alexander rendered the old gentleman after the death of his wife is easily measured in money value. In fact, any services that have been rendered at all while the old gentleman was living with him could be measured by a money value, but there being no first contract in the estimation of the court, it seems that at least the last contract services rendered could be readily compensated him by cash.

"Specific performance should not be enforced if it would be unconscionable or inequitable or work a hardship or injustice. To say to Alexander that he is now entitled to the twelve thousand ($12,000) dollars, by reason of taking care of the old man three or four days after the old man repudiated the contract, for what reason, as I said before, we do not know, it seems to me would be an entire injustice, as an act for this court to recommend.

"I feel that plaintiff's case should be dismissed with costs."

It will thus be seen that the relief was denied upon the grounds generally of the inequity of appellant's claim, in that too much would be granted for too little in return; that the value of the property would be disproportionate to any service that could be rendered in the brief expectancy of life remaining to Frederick Lee Lewes; that the former contract and service, if any, were waived by conduct or overcome by the exe-

cution of the subsequent writings; that the will is not
a contract, but a mere acknowledgment of former
kindnesses; and finally, if the will and agreement be
treated as a contract, it will not be enforced because
the value of the services rendered can be readily ascer-
tained in money, and the remedy is in *quantum meruit*
and not in equity for specific performance, to which
counsel add as a further reason for denying a recovery
that the contract as distinguished from the will was
unilateral and not signed by the testator, and being of
no binding effect upon him, would not support a prom-
ise to make a will.

Cases of this kind are not favored, and when the
promise rests in parol are even regarded with sus-
picion, and will not be enforced except upon the strong-
est evidence that it was founded upon a valuable con-
sideration and deliberately entered into by the de-
ceased.   Waterman, Specific Performance, § 41.

But while not favored and rarely enforced upon oral
proofs, the power to make a valid agreement to dis-
pose of property by will in a particular way has long
been recognized. "But," said the court in *Rivers v.
Rivers,* 3 Desaus. Eq. (S. C.) 190, 4 Am. Dec. 609, after
citing a number of very early English cases, "I
should feel no hesitation to decide this point on prin-
ciple," for, as the opinion declares,

"It appears to me that to make a will in a particular
way, on proper considerations, is as much a subject of
contract as any other; and he who makes a contract on
this subject, is as much bound thereby as he would be
by any agreement on any other subject.  To be sure
the court would be more strict in examining into the
nature and circumstances of such agreements than any
others, and would require very satisfactory proofs of
the fairness and justness of the transaction.  I con-
clude, therefore, that the party had a right to bind
himself to make his will in a particular way by an

agreement, and the court has the power to enforce the agreement.''

So,

''An agreement by which a person obligates himself, for a valuable consideration, to devise or bequeath property to the other contracting party is in *no respect contrary to principles of public policy*. The specific performance of such a contract will be granted in equity against the personal representatives of the promisor; for courts of equity have, from time immemorial, possessed jurisdiction in such a case to carry out the intention of the parties and to afford a remedy where the remedy at law is clearly inadequate. Equity will not make a will to take the place of that which has not been made. But, acting upon well-recognized principles, the court of equity will fasten a trust upon the estate of the promisor in favor of the promisee which will attach to that estate in the hands of his heirs, executor, next of kin or other persons, and which will be enforcible against them. In such a condition of affairs a court of equity will compel the legal owner of the property, who takes by descent or devolution from the promisor, to execute a conveyance of the property to the promisee.

''And where the promisor, after entering into a valid contract to devise the property, conveys it to third parties without consideration, a court of equity will, upon the death of the promisor, decree that the conveyance shall be set aside as against the party with whom he has contracted to devise it.'' 1 Underhill on the Law of Wills, 387.

See, also, Ramsen, Preparation and Contest of Wills, § 9; Rood, Wills, § 54 *et seq.;* Fry, Specific Performance of Contracts (3d ed.), 223.

The remedy in this class of cases depends upon the facts of each particular case and will require full and satisfactory proof of the fairness and justness of the transaction. In this state it has been held that an oral contract to make a will is obnoxious to our statute of

frauds unless the testator in his lifetime has done some substantial thing in pursuance of the contract. In *Swash v. Sharpstein,* 14 Wash. 426, 44 Pac. 862, 32 L. R. A. 796, we are advised that the acts of the parties must be such as to place the contract beyond all legitimate controversy. The proofs required, whether the contract rests in parol or is evidenced by a writing, go not so much to the terms of the contract as to the intent of the testator, for whatever the terms, there can be no devise, either actual or by construction of equity, if there is no intent. And such intent is to be measured as of the time the contract is entered into, and so its fairness and justness must be determined by resort to the relations of the parties, their relations to each other, and the circumstances attending at the time the contract was made.

To devise by will is one of the highest privileges of property, and to agree to make a will in consideration of past or future benefits is well within the realm of contract right.

In the case at bar, the court rejected, and as we think properly, the first cause of action, but it does not follow that we are to reject the narrative of the years that followed the year 1901 as a field for inquiry as to intent of the testator and the relations of the parties, the testator and this plaintiff. That the parties had lived as one household in mutual trust and confidence has been clearly proven. It is in no way denied. That the affection of Frederick Lee Lewes for his deceased daughter and his abiding intent that she should have a portion of his property should find expression in a desire to give the equivalent of what would have gone to her by will or by inheritance, or to her issue, if she had left a child, to her surviving husband, who had been the head of the household and who had not only borne the attitude of a dutiful son, but had made some busi-

ness sacrifices, and at least one change of location, that he might maintain a home for the more comfortable maintenance of the testator, is most probable. When coupled with the actual writing of a will it seems most convincing.

"Here, then, is a writing that may serve to help to prove the contract. The case is such, therefore, that it is not left wholly at the mercy of parol evidence. True, this writing was void, as a will, but that did not prevent it from being good, to help to prove the contract." *Maddox v. Rowe,* 23 Ga. 431, 68 Am. Dec. 535.

Counsel for respondents deny all legal effect to the relations of the parties prior to the time the will was executed, for, as they rightly contend, no action could have been maintained upon the first contract, if any, to make a will in favor of the wife of appellant. But although a court of equity would, in the absence of other controlling facts, give no ear to appellant's plea of consideration for past favors, it will not deny the right of the motive to recognize past favors and to adopt them as part, if not a sufficient, consideration for a promise to convey in the future by deed or to devise by will.

In other words, in the absence of fraud or over-reaching, the testator, being competent, can fix upon anything that is not in itself unlawful as a consideration and put his own value upon it, whether it be greater or less. This is so in this class of cases even in greater degree than in ordinary cases, for the courts have rarely if ever undertaken to fix the value of a consideration sounding in personal service. They have recognized the futility, if not the impossibility, of measuring in dollars and cents love, affection, care, service and attention to the aged or infirm.

"There is no reason in law or equity why the adequacy of that consideration should be here inquired

into. It was a consideration, without any fraud or undue influence, fixed by the Hills of their own free will.'' *Keagle v. Pessell,* 91 Mich. 618, 52 N. W. 58.

Many cases hold that ''A moral obligation founded on previous benefits received by the promisor at the hands of the promisee will support a promise by him.'' These cases are collected in 9 Cyc. 391.

As a part of his first cause of action, appellant set up that, by the terms of what he claims to have been the original contract, Frederick Lee Lewes was to pay ten or fifteen dollars a month to his daughter, and he testified that Mr. Lewes had made slight payment from time to time. It is also in evidence that the old gentleman did some chores about the house; he put in the wood and milked the cow. These circumstances are seized upon to rebut the weight of what might otherwise have been a moral obligation. But we attach no importance to these circumstances. Mr. Lewes had a slight income from his property, and this he gave to his children in small amounts, respondents, as well as to his daughter now deceased. Moreover, it may have been within his mind that fair dealing demanded that he pay something in money from time to time, for it is in evidence that the family was subject to frequent and sometimes long protracted visits from other children or grandchildren.

In this connection it is also insisted that Archie Lee Lewes was a member of the household, and that, after deducting the amounts paid by the father, the balance of the cost of maintaining the home was divided between appellant and Archie Lee Lewes. If the case depended upon the first cause of action, it may be that these circumstances would have sufficient weight to overcome a plea for specific performance, but to give them the legal effect now claimed for them by respondents would be to deny to Frederick

Lee Lewes the right to contract with reference to his own affairs. We must assume, in the light of subsequent events, that Frederick Lee Lewes considered these matters and found them wanting of the quality now claimed for them by respondents. If he gave them any consideration, the law must now presume that he waived them as matters of consideration for the contract evidenced by the will and agreement.

It is not for us to make contracts for competent parties, nor is it for respondents to repudiate the contracts of others because of equities before which the bar of a valid contract has fallen. It would be unseemly, to say the least, for us to hold the contract inequitable as it affects these respondents, when Frederick Lee Lewes found no inequity in his promise.

But if this doctrine be doubtful if standing alone, the agreement of appellant to maintain a home for Frederick Lee Lewes during his lifetime is, when coupled with the recognition in the will of the value of past services, ample to sustain the promise to devise the land. Unless, as respondents contend, the will and the agreement cannot be construed together as writings going to the same transaction; and further, that the agreement is (a) a voluntary unilateral contract on the part of appellant, not being signed by Frederick Lee Lewes; (b) that there was no substantial compliance, and (c) that there has been no substantial compliance in that appellant never made over the insurance certificate as he had agreed.

That the will and the agreement go to the one transaction can hardly be denied. It is true that they do not refer the one to the other, but since the connecting link lies in the consideration, and since it is always competent to prove a consideration, it was competent to prove that the one paper was signed in consideration of the other. It is not necessary that cotemporaneous

papers or writings should refer one to the other. It is enough if they relate one to the other and all go to the same transaction. 6 R. C. L. 640.

In *Bird v. Pope,* 73 Mich. 483, 41 N. W. 514, a similar contract was evidenced by a will and a collateral agreement. The will and the contract did not tie, but the court rejected the theory that the instruments had to be complete in themselves. It was not provided where Pope should be maintained, and there were other conditions with reference to working and living upon the land, of making improvements thereon, and possession, all resting in parol. In ruling that all of these matters might be proved by oral testimony, the court said:

"Not only was it a part of the transaction, a portion of which was embodied in the making of the will and in the contract, but it did not tend in any way to contradict, vary, or alter these instruments or their meaning."

In *Logan v. Wienholt,* 7 Bligh 1, H. L., the promisor made a bond conditioned that he would, in consideration of the marriage of the niece, "either by last will or testament give and bequeath, or by some other means give unto, or in trust" for his niece, money or valuable effects. The promisor left a will, but failed to perform the condition of his bond. The Lords granted a specific performance upon the bond, saying:

"The rights of the parties arise under the bond considered as an agreement, binding the parties: and next, that the intent of the testator by his will, and in the disposition of his property, and, I may add, the various conveyances, and assignments, and transfers, in which he dealt with his property through its various channels, and in its various kinds, and the acts which he so did, are only to be suffered to affect the property so far as they are not repugnant to the agreement, and do not go against the rights given by that agreement, and to be only so far valid as between him and the parties

in whose favour those acts were done or attempted to be done as they did not defraud or contravene that agreement." 7 Bligh, p. 50.

Neither was it necessary that the agreement for support be signed by the promisor. He had given effect to his promise by executing his will and confirmed it by accepting delivery of the contract for support. This made a contract as effectually as if the agreement had been accepted by written signature. *Wright v. Suydam,* 72 Wash. 587, 131 Pac. 239; *Amherst Inv. Co. v. Meacham,* 69 Wash. 284, 124 Pac. 682.

On the issue that there was no substantial compliance, either in time or performance, our holding that the contract as evidenced by the will and the agreement is sustained, in part at least, by past favors is a sufficient answer. Courts will not ordinarily measure equities by time standards to aid one who breaks a contract or those who claim under him.

The test of performance lies not so much in acts of performance as in the mutuality of the contract. Frederick Lee Lewes, being in the full possession of his faculties and presumably knowing his own desires, voluntarily entered into the contract. As it happened, he voluntarily broke it. If, on the other hand, appellant had refused to perform his part of the contract—refused to keep and maintain a home for Mr. Lewes—we have no doubt that he could have been compelled to abide his contract or be made to answer in damages for its breach, or that a court of equity would have relieved the promisor of his obligation to perform.

To say that appellant should have no relief because he has not substantially performed would be to bind him by a circumstance for which he was in no way responsible, to the exclusion of all other circumstances, one of which is paramount and the creation of the

promisor; that is, the breaking of the contract by the promisor himself. We have then, or may grant, a nonperformance except for four days, but a willingness to perform on the part of the appellant and a voluntary breach of his contract by the promisor. When considered in its entirety and not upon the isolated fact that no great length of time passed, or there was only slight performance between the execution of the papers and the departure of Mr. Lewes from the home of appellant, it is plain that he cannot be charged with nonperformance, for no one can deny that Mr. Lewes, by his own renunciation, put it beyond his power to render a more substantial compliance.

There is nothing mysterious or mystifying about contracts to devise by will. They are valid and will be enforced as other contracts, and where the promisor has repudiated his contract, and although such a contract is not broken until death so as to support a cause of action, one court at least has gone so far as to hold that a bill *quia timet* is available to fix the legal status of property where the promisor has repudiated his contract during his lifetime and has attempted to make other disposition of his property. *Duvale v. Duvale,* 54 N. J. Eq. 581, 35 Atl. 750.

The case ordinarily presented is one where the promisee fails to perform. The question of substantial performance is then important. But this case rests not upon the failure of the promisee, but upon the repudiation of his contract by the promisor.

In *Bird v. Pope, supra,* there had been part performance when the contract was broken by the promisor. The court held that a willingness to perform, the contract being broken, would have been sufficient to sustain the action; that a party might lose the advantage of his contract by his own wrongful acts, but that the

promisor was powerless to convey the premises away
from him so long as he was performing, or was willing
to perform his contract to the end. In that case, as
in this, the contract was dictated by the promisor with-
out the intervention of the promisee.

Reduced to its lowest terms, we have a contract to
devise land by will evidenced by two cotemporaneous
writings, one of which is a will executed for the purpose
of carrying out the contract, followed by an attempted
revocation of the will. Where wills are voluntarily
executed the power to revocate is absolute, but,

> "The general rule under which the revocable char-
> acter of wills is universally admitted to exist is subject
> to a seeming exception, where the execution of the will
> is a part of a contract to make a will, and the person
> in whose favor the devise was made has gone into pos-
> session and made expenditures upon faith in the con-
> tract. Perhaps it is hardly correct to claim that the
> will is irrevocable. While the testator may destroy the
> will or execute another revoking it, the contract itself
> cannot be rescinded, and will be enforced by the court
> in favor of the person who has acted upon it." Under-
> hill, Wills, § 289.

That one who is willing to act upon the contract but
who is prevented by the voluntary repudiation of the
other party is in the same legal position as one who
has substantially complied before repudiation goes
without saying. It is no more than the statement of a
corollary.

It is true that no testimony was offered to sustain the
allegation of the complaint that a transfer of the in-
surance certificate had been made, but such omission
would not alter the rights and obligations of the parties
to this action. The object of the transfer was to give
Frederick Lee Lewes the benefit of the policy in case
he should survive appellant. The undertaking was per-

sonal to Frederick Lee Lewes, and, he having died, it is not now material.

Mindful of the rule that, in all cases brought to enforce a contract to devise land, we must look to the facts of the particular case and follow the equities arising out of them, we have made little reference to the many authorities cited by counsel. We have examined them, but find in them no more than an application of the general principles stated in the text books, to which reference may be the more conveniently made.

Appellant has prayed for a decree directing that respondents pay, or cause to be satisfied, a certain mortgage for the sum of five hundred dollars which was placed upon the property by Frederick Lee Lewes after the execution of the will. Respondents are not personally liable for this incumbrance and we are without power to charge them with its payment.

Reversed, and remanded with directions to enter a decree granting the prayer of appellant's complaint, excepting in so far as herein indicated.

MAIN, C. J., MOUNT, HOLCOMB, and MACKINTOSH, JJ., concur.