## FARM & HOME SAVINGS & LOAN ASS'N OF MISSOURI v. EMPIRE FURNITURE CO.

Motion No. 8214; No. 8095.

Court of Civil Appeals of Texas. Austin.

Nov. 6, 1935.

Rehearing Denied Nov. 27, 1935.

Lee & Muse, of Brownwood, for appellant.

Callaway & Callaway, of Brownwood, for appellee.

## McCLENDON, Chief Justice.

Appellee (furniture company) sued appellant (loan association) to recover title and possession of various articles of household furniture, equipment, and apparatus. In a trial to a jury upon special issues, the judgment was in favor of the furniture company, and the loan company has appealed.

The litigation arose out of the following facts:

Some time in the spring of 1929, Tyler applied to the loan association for a $10,000 loan upon an apartment house he was then erecting in Brownwood. The loan was consummated on July 31, 1929, and was secured by a trust deed upon the real estate, and, to quote the trust deed, "* * * also all furniture and fixtures contained in the apartment building on the above described premises—together with all improvements now or hereafter thereon, including all fixtures, heating, lighting and water supply apparatus, window screens, shades and awnings, and all equipment now or hereafter used on or about said premises."

On July 31, 1929, Tyler conveyed the property "covered by the loan" to Isbell, who assumed the loan "and agreed to pay to the above named Association under the terms and conditions named in the mortgage papers." In February, 1932, the loan association foreclosed its mortgage, through a trustee's sale, and bought in the mortgaged property, including the personal property; from which time it has been in possession of the property. February 9, 1933, Isbell made a bill of sale to the furniture company, covering the property in suit, for $250; $135 of which consisted of the cancellation of a debt due by Isbell to the furniture company, and the balance was to be paid to Isbell when the furniture company should recover the property.

The controversy in the main arises over: (1) Whether the property in suit was in the apartment building when the trust deed was executed; and, if not (2) whether it was covered by the terms of the trust deed.

We will first consider the latter question, which involves a proper construction of the above-quoted mortgage clause.

It is to be observed that the clause embraces "all furniture and fixtures in the" building, and "all improvements now, or hereafter thereon, including all fixtures, heating, lighting and water supply apparatus, window screens, shades and awnings, and all equipment now or hereafter used on or about said premises." "Furniture," it will be noted, is not specifically included in the articles "thereafter" in the building, but only in the articles "contained in" the building. "Furniture," as applied to an apartment house, would include most, if not all the articles involved in the suit. See 27 C. J. p. 934, § 7, G. "Apparatus" is limited by the instrument to "heating, lighting and water supply." Among the articles are "4 porcelain bath room heaters," "4 7-21 guardian clay back heaters," and "3 gas bedroom heaters." These clearly come within the term "heating apparatus." There are also "about 60 window shades" which are expressly specified in the "now or hereafter" provision of the mortgage.

All of these articles are clearly covered by the mortgage, whether in the building at the date of the mortgage or not.

"Equipment" has been defined as "whatever is used in equipping; the collective designation for the articles comprising an outfit." The equipment of an apartment house may, in a broad sense, be held to include the furniture. The difficulty here, however, lies in the fact that "furniture" is used to designate the mortgaged articles in the building at the time of the mortgage, and "equipment" to designate such as were then there or thereafter placed there. It must be presumed that these words were deliberately used as designating different articles; otherwise there would be no purpose in employing "furniture" in the first circumstance and omitting it in the latter. Under these circumstances we believe the proper interpretation of the quoted clause to be that "furniture" was used to designate such articles as are generally and

popularly included in the term; that is, those readily movable articles which would be serviceable generally as household furniture without any special reference to the particular building;.whereas, "equipment" was used to designate those articles especially designed for the particular building, or one of like character. It is quite probable that the loan company intended its mortgage to cover a completely furnished apartment. But the instrument it drew does not so state; and we are required to give a reasonable and practical construction to its wording. It is a matter of common knowledge that apartments are rented in some instances completely furnished and in others unfurnished; and the latter often with certain equipment not commonly possessed by tenants of dwelling houses.

There is evidence that some of the "4 buffets" were "built in," and therefore specially designed for the building. The evidence regarding the other articles is not developed upon this point; although most of them would fall within our interpretation of "furniture."

The evidence supporting the jury finding that the furniture was not in the building at the date of the mortgage is questionable. The decided preponderance supports the opposite conclusion. So much so that we would feel constrained to reverse the judgment upon that ground if a specific assignment were directed thereto. It is only incidentally urged in the loan company's brief. We do not think it necessary to incumber this opinion with a detailed statement of this evidence.

■ .The point becomes material, however, in considering an assignment predicated upon improper argument. In the closing argument counsel for the furniture company said: "Why, Gentlemen of the Jury, they took his farm away from him (referring to J. L. Isbell), and now they are trying to steal his furniture."

From the qualification of the bill of exceptions it appears that the trial judge was in the rear of the courtroom when this statement was made, and when "informed about the matter" he instructed the jury "not to consider the remark and again repeated the instruction and caution at the close of the argument and extended the instruction to any inflammatory or prejudicial remarks that might have been made by either counsel during the argument of the case." The remark was promptly withdrawn by counsel who made it. The only predicate in the record for this statement was in testimony of Grove, an employee of and witness for the furniture company, in detailing a conversation he had with Isbell in which he stated that Isbell had said, "They have taken my farm away, I guess they have taken the furniture away too." This testimony was objected to, and the jury were instructed not to consider it.

Although Isbell was not a nominal party to the suit, it appeared that he was directly interested in the result to the extent of $115. The argument was highly inflammatory and prejudicial; and in view of the situation of the parties constituted an appeal to the sympathies of the jury. It is of the same character as that denounced in Barnes v. McCulloch (Tex. Civ.App.) 53 S.W.(2d) 89, and Pfeuffer v. Haas (Tex.Civ.App.) 55 S.W.(2d) 111, wherein it was held that instruction of the court not to consider it did not remove the prejudice. In view of the fact that the evidence greatly preponderates against the verdict, we think the argument constituted reversible error. In any event, for the reasons already stated, the judgment is erroneous at least in part.

■ The judge's qualification of the bill of exceptions further shows that he consulted the foreman of the jury who told him in effect that the argument was not mentioned by the jury, and did not influence their verdict. Our practice does not admit of this character of inquiry of jurymen regarding the manner in which they arrive at their verdict.

The trial court's judgment is reversed, and the cause remanded.

Reversed and remanded.

### On Motion for Rehearing.

The following is from appellee's motion for rehearing:

"Now, in arguing this case (at the risk of being criticised for going outside the record but also in an effort to try to explain to this court the context of the remarks and in a way make them intelligible), here is exactly what happened: I had been referring to the fact that Isbell had traded Tyler a farm for his equity in this apartment house; and had made some payments on the apartment house, and after he had bought it, and since the loan was supposed to represent some 65% of the value of the house, his farm must

have been of considerable value. And now, since he had lost it on foreclosure, he had lost his farm in West Texas in the deal and now these people, it looks like, are trying to steal his furniture. Then, on objection being made, here is exactly what I said:

"'Of course, you gentlemen understand that they are not exactly trying to steal his furniture, but if they take it away from him without any right to it, and there is not a great deal of difference, so far as he is concerned. He has lost his furniture if they are permitted to keep it.'

"The above is exactly what happened before and after the remark was made and stripped of its glaring appearance by virtue of being isolated from everything else in context, this court can readily see how perfectly innocuous and harmless the whole statement was."

Even if we were permitted to go outside the record and accept this version of what happened in the trial court, we cannot see that thereby the noxious effect of the argument would be removed or in any substantial degree assuaged.

The motion is overruled.

Overruled.