## JOHNSON et al. v. DURST et al.
### No. 8520.

Court of Civil Appeals of Texas. Austin.
March 23, 1938.

Rehearing Denied April 27, 1938.

Troy Smith and W. R. Castle, both of Tyler, Glover Johnson, of Fort Worth, Maco Stewart, of San Antonio, and George Burgess, of Dallas, for appellants.

Curtis, Evetts & Dice, of Belton, and Cox & Brown, of Temple, for appellees.

McCLENDON, Chief Justice.

Suit by Mary Celesta and Sophia Elizabeth Durst (daughters, of Mrs. Celesta R. Durst, sister of Mrs. Birdie Robertson Johnson, deceased, wife of the late Hon. Cone Johnson) to establish an equitable title and trust in all the property of Mr. Johnson predicated upon a written contract (alleged to have been lost) executed by Mr. and Mrs. Johnson in the spring of 1926, by which, in consideration of an agreement on Mrs. Johnson's part not to revoke a will she had made in 1913 devising all her property (except certain specific bequests) to him, he agreed to devise to plaintiffs all the property he thereby acquired and all other property (excepting two legacies aggregating $4,000) owned by him at the time of his death. Mrs. Johnson died in November, 1926, and her 1913 will was probated. Mr. Johnson married Miss Ethel F. Hilton August 2, 1928. July 28, 1928, he made a will, reciting his contemplated marriage to Miss Hilton, and bequeathing to her $2,000 in money, other

personal property of the value of $10,000, his home in Tyler, the furnishings thereof, and his personal effects. The remainder of his estate, after seven specific legacies, he left to Mrs. Durst and her two daughters (plaintiffs). These specific legacies were: $2,000 to Cone Johnson, son of his brother, Earl Johnson; $1,000 to Samuel Johnson, son of his brother, Dr. S. W. Johnson; $2,000 to Gilbert Robertson, nephew of his deceased wife; $1,000 each to two daughters of Mrs. Howell, a niece of his deceased wife; $2,000 to his brother, Dr. Clay Johnson; $2,000 to his sister, Mrs. Matchett; and $1,000 to the daughter of his deceased brother, A. C. Johnson. He died March 17, 1933, and his above will was probated in Smith county. Mrs. Ethel F. Hilton Johnson was appointed and qualified as administratrix with the will annexed, and administration was pending in the probate court of Smith county at the time of the trial below. The suit was against Mrs. Ethel F. H. Johnson, both individually and as administratrix, the other beneficiaries under the 1928 will, and others not essential to note. The trial was to a jury upon two special issues, which, with the jury's answers, read:

"1. Do you find from a preponderance of the evidence that sometime in March, April or May, 1926, or prior thereto, Cone Johnson agreed with his wife, Birdie R. Johnson, that if the latter would not revoke her will of date, May 24, 1913, offered in evidence before you herein, he, the said Cone Johnson, would devise and bequeath the property thereby devised and bequeathed to him, together with all other property which he might own at the time of his death, to plaintiffs Mary C. Durst and Sophia E. Durst, except the sum of Two Thousand Dollars to Gilbert Parker Robertson and Two Thousand Dollars to the two daughters of Birdie R. Howell?" Answer: "Yes."

"2. Do you find from a preponderance of the evidence that said agreement, if any was made, as referred to in Special Issue No. 1, was in writing, signed by said Cone Johnson and Birdie R. Johnson?" Answer: "Yes."

The judgment was in favor of plaintiffs decreeing in them all the property of Mr. Johnson, specifically enumerating it in the decree, including (as against Mrs. Johnson both individually and as administratrix) all rentals and income upon the property accruing since the death of Mr. Johnson, subject to "legal offsets because of taxes paid,

necessary insurance premiums paid, and such repairs and maintenance as may have been necessary and proper for the preservation and care of said property," and subject to a certain rental contract made by the administratrix. Execution was ordered to enforce the judgment.

The appeal is by Mrs. Johnson, individually and as administratrix, and by all the other beneficiaries under the 1928 will, except Cone Johnson, Gilbert Robertson, the two daughters of Mrs. Howell, and Mrs. Durst and her two daughters (plaintiffs).

Appellants present ten propositions, nine in their original and one in a supplemental brief. These urge the following points:

(1) The contract sued upon was against public policy and void, since its effect was to barter away whatever Mr. Johnson might acquire in the future (Sup. br.).

(2) The contract was void, being between husband and wife (No. 5).

(3) The contract was inadmissible to vary the terms of Mrs. Johnson's 1913 will (No. 2).

(4) Testimony supporting the contract sued on and a prior will of Mr. Johnson were inadmissible, as no abstract of title had been filed as requested (Nos. 3 and 4).

(5) The evidence was insufficient to support the verdict (No. 9).

(6) The probate court of Smith county had exclusive jurisdiction of the case (No. 1).

(7) The recovery in any event should have been subject to administration (No. 7), and no personal judgment should have been rendered against Mrs. Johnson or her tenant for rents accruing after Mr. Johnson's death (No. 8).

(8) Certain argument of counsel to the jury constituted reversible error (No. 6).

Preliminary to a discussion of these points, we make the following general statement from the record:

Cone Johnson and Birdie Robertson were married about 1880, and lived together as man and wife until her death November 15, 1926. They had no children. Mrs. Johnson was a daughter of C. Sterling C. Robertson, who left quite a large landed estate that was divided among his ten children, including Mrs. Johnson and Mrs. Durst. Mrs. Durst was about eight years younger than Mrs. Johnson, and the record shows that Mrs. Johnson was very fond of Mrs. Durst's two daughters (plaintiffs), often had them visit her, and showed great solicitude for

their welfare. In her 1913 will she provided for their education to the extent of not exceeding $2,000 to each. The evidence in support of the contract sued on came from Mrs. Durst and Mrs. Andrews, the widow of a Methodist minister who had been the pastor of Mr. and Mrs. Johnson in Tyler in 1913 and 1914, and their presiding elder in 1926. Mrs. Andrew testified to a conversation between her and Mrs. Johnson in the spring of 1926, in which Mrs. Johnson showed her a paper signed by Mr. and Mrs. Johnson, in which: "It (the paper) said that she agreed not to change her will of 1913, and he agreed to leave the property to the girls (plaintiffs) in his will, after the four thousand dollars to the two bequests had been paid, and that he would also leave them any property he had acquired."

She had previously testified to a conversation between her husband and Mr. Johnson, during a visit of the latter to their house in 1913, in which the subject of wills was under discussion, and in which she quoted Mr. Johnson as follows: "He said that the best kind of a will to make was a joint will, between husband and wife, and that his wife had recently made her will leaving her property to him; that she had originally intended it to go to her nieces and that he had promised her he would will it to them. He used that as an illustration of a joint will."

Mrs. Durst testified to a conversation between her and Mr. Johnson a few days after Mrs. Johnson's death, in which he told her of a written agreement he had made with his wife, but which he could not then find. She quoted him as follows: "He said the agreement was that he and Birdie had drawn up, this paper, in which she agreed not to change her will, provided he would agree, and he did, that he will, after his death—before his death—draw up this instrument—that he will all of her property, as well as any he had at the time I was mentioning—just after her death—and property he had then and whatever he might acquire, would be willed to Mary and Sophia, my daughters, with the exception of the two thousand dollars given to Gilbert Parker Robertson and two thousand dollars, one each, to Birdie Howell's daughters."

In connection with this conversation she produced a will of Mr. Johnson, and testified that he handed it to her and told her it was in accordance with the agreement between him and his late wife. The body of the will read:

"This is not to affect the will heretofore made by me bequeathing all my property to my wife, Birdie R. Johnson, and is not to take effect except in the event she should die before I do—& time & opportunity should not be afforded to make a detailed full disposition of my estate.

"1. I bequeath to Gilbert Robertson $2000.00 cash.

"2. To the two daughters of Birdie R. Howell, each $1000.00 cash.

"3. All the remainder of my estate, including that rec'd by me through inheritance from my wife Birdie R. Johnson, as her separate estate, through her deceased father, I will to the Citizens National Bank of Tyler, Texas, and/or its successors, in trust for my wife's nieces, Mary Celesta Durst and Sophia Durst.

"4. The said nieces to have and receive the rents & revenues derived therefrom for the period of ten years from my death, then they are to receive the said property in fee.

"5. First, however, all debts both of my wife and myself shall be paid, including last sickness, funeral expenses and a suitable monument over our graves. And the bequest in item 3 to our said nieces is to embrace all property or estate remaining at my death.
Written wholly with my own hand, at Ft. Worth, Texas, this Aug. 30, 1926."

Two other wills of Mr. Johnson were introduced. One dated February 2, 1923, giving all his property to his wife; the other dated November 22, 1926 (just seven days after the death of his wife and within about two days of his above conversation with Mrs. Durst), the body of which read:

"The will of Cone Johnson, of Tyler, Tex.

"1. This revokes all previous wills.

"2. I bequeath:

"1. To my namesake, Cone Johnson, Jr., son of Earl Johnson, $2,000.00.

"2. To my nephew, Samuel Johnson, son of Dr. S. W. Johnson, $1,000.00

"3. To my brother, Dr. Clay Johnson, $2,000.00

"4. To my sister, Mrs. Virgie Matchett, $2,000.00

"5. To my nephew, Glover Johnson, my law library and office furniture, which includes my interest in the library of Johnson & Edwards.

"6. To Mrs. Lela Robertson, $2,000.00.

"7. To the two daughters of Mrs. Birdie Howell, $1,000.00 each.

"8. To Gilbert Robertson, $2,000.00.

"9. All the rest and residue of my estate I bequeath to Mrs. Celeta Durst, and her two daughters Mary Durst and Sophia Durst share & share alike.

"Written wholly with my own hand at Tyler, Texas. Nov. 22nd, 1926."

The first point is predicated upon appellants' construction of the contract as being one whereby Mr. Johnson "agreed to leave by his will all that he might in the future acquire after the death of Birdie Johnson, and during his entire life." The rule invoked is that a man may not incumber (or sell) his "ability to labor for his natural life"; or as expressed in McDavid v. Phillips, 100 Tex. 73, 94 S.W. 1131, 1132: " 'In this free country' a man cannot sell himself." We do not so construe the contract. As pleaded, found by the jury, and (as we hold below under the fifth point) supported by the evidence, the contract was that (excepting the two specific legacies) he would devise all the property he acquired under the will of Birdie Johnson and other property he might own at the time of his death. Cheney v. Coffey, Tex.Com.App., 113 S.W. 2d 162. In effect this agreement was that he would (with the stated exceptions) make the two Durst girls sole beneficiaries under his will. Such agreement necessarily imported that his estate would be charged with the payment of his debts and other enforceable obligations, and be subject to administration. Such contracts are uniformly held valid. Jordan v. Abney, 97 Tex. 296, 78 S.W. 486; Carstairs v. Bomar, 119 Tex. 364, 29 S.W.2d 334; 68 C.J., p. 565, § 187.

Upon the second point, it may be conceded, for the purposes of this case, that, so long as the contract remained executory on Mrs. Johnson's part, it was unenforceable as to her, and she was free at any time to revoke her will. We deem it unnecessary to review the many decisions bearing on the question. We refer to the well-considered opinion by this court (Judge Rice writing) in Larrabee v. Porter, 166 S.W. 395, error refused.

Nor do we deem it important to inquire whether such contract, while executory, is void or merely voidable at the instance of the wife or her privies.

Generally speaking, contracts of a married woman are not void, but merely voidable at her option. Leake v. Saunders, 126 Tex. 69, 84 S.W.2d 993; Guaranty State Bank v. Kuehler, Tex.Civ.App., 114 S.W.2d 622; 23 Tex.Jur. 233.

Also, generally speaking, the rights of husband and wife to contract with each other are thus summarized by Judge Brown in Sparks v. Taylor, 99 Tex. 411, 90 S.W. 485, 489, 6 L.R.A.,N.S., 381: "The husband may enter into contracts with his wife concerning their property rights. He may purchase land from her and may sell land to her. He may borrow money from her, and he may pay the debt, just as he would to any other creditor. He may become her trustee or agent for the investment of funds which belong to her, the same as he may assume those relations to any other person. In fact his power to contract with her seems to be limited only by her incapacity to convey land to him because of the fact that he cannot join her in the conveyance."

Whatever may have been the right of Mrs. Johnson with regard to the contract, its invalidity cannot be urged against her or her privies, after its full performance on her part. She may be conceded the power at any time to revoke her will, and make whatever disposition of her property she chose. But invalidity of her fully executed agreement not to revoke her will could not be urged by Mr. Johnson, who probated the will and by that affirmative act after her death, when the power of revocation was gone forever, he accepted and received all the benefits of her agreement not to revoke it. Larrabee v. Porter, supra.

Even in those jurisdictions where such contracts are held void, the general rule is thus stated in 13 R.C.L. p. 1255: "Still the contract of a married woman has been held binding on the opposite party when she had fully performed, since it would be unjust to permit the other party to set up as a defense that the married woman had no power to make the contract of which he has enjoyed the benefit."

But it is urged the contract was void, since it was in contravention of R.C.S. art. 4610, which reads: "Parties intending to marry may enter into such stipulations as they may desire, provided they be not contrary to good morals or to

some rule of law; and in no case shall they enter into an agreement, or make any renunciation, the object of which would be to alter the legal orders of descent, either with respect to themselves, in what concerns the inheritance of their children or posterity, which either may have by any other person, or in respect to their common children; nor shall they make any agreement to impair the legal rights of the husband over the persons of their common children. No matrimonial agreement shall be altered after the celebration of the marriage."

■ The inhibitions of this statute have been held to apply to post as well as prenuptial contracts. Cox v. Miller, 54 Tex. 16, 24; Groesbeck v. Groesbeck, 78 Tex. 664, 14 S.W. 792, 793.

In the Groesbeck Case, the statute was held applicable to the "legal order of descent" as it affected the two spouses, as well as with respect to their children. In that case there were no children, but the agreement deprived the wife of her right of inheritance from her husband. The court say: "The agreement was intended to change the law of descent, and, at the death of the husband, deprived the wife of her distributive share of his property under the law. Husband and wife cannot alter the legal order of descent, in respect to themselves or their children, by contract made in contemplation of marriage, and, by a much stronger reason, they cannot do so by contract during marriage."

■ The contract did not deprive Mr. Johnson of his right of inheritance from his wife, but gave him a greater share in her estate than he would have received under the laws of descent and distribution. He therefore was in no condition to complain of the contract's invalidity.

Clearly, the contract would have been void or voidable as to any children of Mr. Johnson. But as he had none by either marriage, there was no one whose rights were deleteriously affected by the contract; and therefore no one to urge its invalidity.

Clearly, he was not so situated, since, as we have shown, he ratified it, after the disability of coverture had ceased, by probating the will and accepting all the benefits of the contract. Larrabee v. Porter, supra.

■ The third point does not seem to have been specifically passed upon in this state. It is a well-established rule that a trust may be ingrafted upon a deed, absolute in form; and that such trust may be shown by parol. In principle, there would seem to be no distinction between a deed and a will in this regard. We are not concerned here with the parol evidence rule, since the agreement at bar was in writing. Corpus Juris, Vol. 69, p. 750, gives the rule applicable in other jurisdictions as follows: "An exception to the rule that a trust cannot be established by evidence dehors the will is allowed and enforced in equity where the devisee or legatee has procured an absolute devise or bequest to himself by promising the testator, expressly or impliedly, that he would hold it for the benefit of another, and afterward refuses to perform his promise, but claims to hold the property in his own right and for his own benefit. In such a case equity will raise and enforce a constructive trust, unless the intention to create a trust is lacking."

■ Whether a trust was created affecting the property devised by Birdie Johnson is, however, not material, since the suit deals only with property which Mr. Johnson owned at the time of his death. A contract to devise all such property was, as we have seen, clearly valid, and was not in contravention of any term of Mrs. Johnson's will.

■ The fourth point is manifestly not well taken. This was not a suit in trespass to try title. But even if it were, the evidence was properly admitted because specially pleaded, and the statutory requirement of furnishing an abstract of title had no application. Vernon's Ann.Civ.St. arts. 7376–7379. The pleading supplied the data which the statutes were designed to obtain. 41 Tex.Jur. p. 551, § 73.

■ The fifth point is predicated upon the proposition that the evidence supporting the contract was not of such "clear and satisfactory" character as is required in suits of this nature. The assignments relating to this point do not invoke the jurisdiction of this court to pass upon the sufficiency of the evidence factually, but only as a matter of law. Our jurisdiction is therefore the same as that of the Supreme Court, as to which we quote the following from Briscoe v. Bright's Adm'r, 231 S.W. 1082, 1084: "The sufficiency of proof to meet the requirement that it should clearly and satisfactorily establish a contract which the courts

can enforce is presented here only as a question of law. Conceding for the purposes of this case that the contract sought to be enforced falls within the rule requiring that its terms be proved clearly and satisfactorily and treating the question as one of law only, the evidence must be viewed most strongly in support of the trial court's judgment. The fact that the witnesses who testified may not have been disinterested, or may have made conflicting statements, or that their credibility may have been attacked, are matters with which it is not our province to deal. As we understand the rule contended for, it is not violated by objections to the evidence of this character. It only requires that the terms of the contract essential to recovery be supported by evidence sufficiently clear for the court to determine what those terms were without resorting to inference or conjecture. In this, as in every other class of cases that we now recall, the credibility of the witnesses and the weight to be given to their testimony are questions solely within the province of the jury, subject, however, to be revised by the trial judge and the Court of Civil Appeals."

The evidence clearly met this test of sufficiency.

Sixth point. The suit was one of which the district and not the probate court had jurisdiction. This was expressly ruled in Carstairs v. Bomar, supra. See, also, Carl v. Settegast, Tex.Com.App., 237 S.W. 238, 240.

We sustain the seventh point. The effect of the personal judgment for rents accruing since the death of Mr. Johnson and awarding execution to enforce the judgment was to oust the jurisdiction of the probate court. The rights of heirs, devisees, and legatees are subordinate to administration. This is the situation of appellees, except in so far as they may establish a trust in the property of Birdie Johnson.

We also sustain the eighth point. The statement complained of was made by one of appellees' attorneys in his closing argument to the jury. It read: "You gentlemen have perhaps wondered why witnesses did not testify to conversations they had with Cone Johnson and Mrs. Cone Johnson, but the law throws certain restrictions around the lips of witnesses in regard to such conversations, and for that reason any uncertainty that you have in your mind or that the testimony wasn't developed more fully, was because the law did not permit or allow such."

The trial judge qualified the bill as follows: "The jury was being retired at the time defendants' counsel announced to the Court that they objected to said argument, and the Court then asked defendants' counsel if they desired the Court to recall the jury for an instruction or to send an instruction up to the jury in the jury room; whereupon defendants' counsel stated to the Court that they did not desire that any instruction be given to the jury about the argument, but merely wished to preserve their exception. The Court recalls the argument attributed to Mr. W. R. Brown, and finds that the above quotation therefrom is correct, but the Court's impression of the effect of said argument is not in accord with that stated in the foregoing bill of exception, it being the impression of the Court that the effect of said argument, taken together with Mr. Brown's argument as a whole, was simply to tell the jury that legal restrictions had prevented both the plaintiffs and the defendants from more fully developing evidence concerning conversation which may have taken place between themselves and either Cone Johnson or Birdie Johnson."

The statement was of the same general character as that condemned in Brackenridge v. Roberts, 114 Tex. 418, 267 S.W. 244, 270 S.W. 1001, and Ashmore v. Pike, Tex.Civ.App., 108 S.W.2d 276.

The general rule applied by this court as regards improper argument is that where the situation of the parties and the state of the evidence is such that the argument was calculated to influence the verdict, the error in admitting it will be held material. Barnes v. McCulloch, Tex. Civ.App., 53 S.W.2d 89; Pfeuffer v. Haas, Tex.Civ.App., 55 S.W.2d 111; Farm Loan Ass'n v. Furniture Co., Tex.Civ.App., 87 S.W.2d 1111.

Recent opinions of the Commission of Appeals hold that one complaining of improper argument is entitled to reversal of judgment as a matter of law, if there is reasonable doubt of its harmful effect. Texas Ins. Co. v. McCurry, 41 S. W.2d 215, 78 A.L.R. 760; Floyd v. Cas. Co., 39 S.W.2d 1091.

■ This suit turned upon the existence, vel non, of a contract in writing, alleged to have been lost. The parties to the contract were both dead. The only witness who claimed ever to have seen the contract was Mrs. Andrews. Her testimony related to an occurrence ten years prior to the trial. In the meantime she had never discussed the matter with any one. The fallibility of human recollection, so universally recognized, would cast a grave doubt upon her ability to recall the controlling terms of the agreement. The only other testimony supporting the contract was that of Mrs. Durst, mother of plaintiffs. Her testimony is stated above. A number of letters of Mrs. Durst to Mr. Johnson, written after Birdie Johnson's death and prior to Mr. Johnson's second marriage, were introduced. While these letters deal with financial matters, in none of them is there any suggestion of the above conversation she testified as having taken place within five days after Birdie Johnson's death. The only reference to any possible claim she or her daughters might have to Mr. Johnson's estate was in a letter written on the first anniversary of Birdie Johnson's death. From it we quote:

"You think I am 'grasping and mercenary'—but I am only asking for what she told me and wrote me repeatedly was to be mine and Mary's and Sophia's, at her death. She often said 'Everything I have will be yours and the girls (Mary & Sophia) at my death'—'Cone will be good to you all. Trust him and love him, and be kind to him—he has promised me that he will will to you, Mary & Sophia all my property. I have confidence in him, he will do the right, and honorable thing by you.'

"She said this on her death bed. I also have her letters, saying much the same thing, also that all my debts to her were to be cancelled, etc.

"Now, I am not saying this in the spirit of vindictiveness, or to cause you any disturbance of mind, and I know you are too big to get angry, because of this letter. I may die before you do, so be good to me now."

It is to be noted that this statement coming from the lips of Birdie Johnson on frequent occasions and finally on her death bed differs in two important respects from the contract alleged and found: (1) The agreement (promise of Mr. Johnson) related only to Birdie Johnson's property; and (2) Mrs. Durst, as well as her daughters, was to be a beneficiary.

There are several other important circumstances that should be noted. The will executed in August, 1926, while Birdie Johnson was in the hospital in Fort Worth, afflicted with cancer from which she died a few months later, shows on its face that it was only to be operative temporarily—in case his wife should predecease him, and time was not afforded him to make other disposition of his property—clearly indicating that he expected to and had the right to make such disposition. Mr. Johnson was an able lawyer and distinguished official and citizen. Yet within two days after handing this will to Mrs. Durst and telling her it was in accordance with the terms of a contract he had made with his deceased wife, we find him making a will which constituted a palpable breach of that contract.

Such in broad outline was the condition of the evidence.

Under the circumstances, we believe the argument was both improper and harmful. The jury were told in effect that any doubt which might arise in their minds from failure to fully develop the evidence was due to the fact that the law threw restrictions around the lips of witnesses in regard to conversations with Mr. and Mrs. Johnson. Nor do we think the qualification of the bill materially altered the effect of the argument. The only witnesses, other than plaintiffs, whom the bar of the statute affected, were the present Mrs. Johnson and relatives of Mr. Johnson. These would hardly have been in position to testify to pertinent conversations with Birdie Johnson, and statements made by Mr. Johnson would have been self-serving, and therefore not admissible. The argument, coming as it did from plaintiffs' counsel, and under the circumstances related, could hardly be interpreted other than as a statement that but for the bar of the statute, plaintiffs would corroborate the evidence of Mrs. Andrews and Mrs. Durst in support of the contract alleged.

In the situation, an instruction not to consider the argument was calculated to have the effect of accentuating it. We hold the argument constituted reversible error.

The trial court's judgment is reversed, and the cause remanded.

Reversed and remanded.