## WISEMAN v. ROBBINS.

No. 4709.

Court of Civil Appeals of Texas. El Paso.

March 15, 1950.

Rehearing Denied March 29, 1950.

372

Cunningham & Ward, El Paso, O. L. Malone, El Paso, for appellant.

Andress, Lipscomb & Peticolas, El Paso, for appellee.

SUTTON, Justice.

This is a will contest and the appeal is from the 41st District Court of El Paso County.

Lola Jane Robbins, a feme sole, filed the application to probate the holographic will of Emery Eugene Wiseman in the County Court of El Paso County. The appellant, Mrs. Madelaine Wiseman, wife of the deceased, filed a contest of the application predicated on two grounds, lack of testamentary capacity and of undue influence. The application to probate the instrument was denied in the County Court and the case was appealed to the 41st District Court. A trial there was to a jury and the issue of testamentary capacity was alone submitted to the jury. The jury found the deceased to have testamentary capacity and the will was admitted to probate, from which this appeal is prosecuted.

There are 71 points of error listed for our consideration. However, many of them are grouped and we think it will not be necessary to discuss them in detail. They have to do with the admission of testimony; argument of counsel; jury misconduct and the failure to submit the issue of undue influence.

On the opening argument counsel for the proponent said: "Now you may wonder why neither Miss Robbins nor Mrs. Wiseman testified with reference to the dealings they had with Wiseman. The reason for that is that under the law neither party is entitled to testify as to any transaction with the deceased. Therefore, we do not have,— don't have the benefit of their testimony. That's the law, we can't get around it, that's the way it is. We can't take into consideration any speculation as to what their testimony might be."

In the closing argument counsel for proponent said: "Mr. Peticolas has told you her lips and Mrs. Wiseman's lips both were sealed as to any transaction with Eugene

Emery Wiseman unless I want to ask her, Mrs. Wiseman, something and unless Bob wanted to ask her something about it, and then the other party who called them, but neither one of us saw fit to do so and so they didn't testify."

The bill of exceptions concerning this last bit of argument was qualified to the effect it was a part of argument made in response to argument of opposing counsel that Miss Robbins had been shown to have run around with Wiseman knowing he was a long time married man; that she knew what she wanted; that she wanted to take from Mrs. Wiseman, who had been married to the deceased for 37 years what belonged to her and that which she had worked to help earn, and that a sound man would not engage in such conduct, and that the last quoted argument was followed with the following: "But she, referring to Lola Jane Robbins, was put on the stand here for the sole purpose of relating her history and who she was, and letting you, as men of experience, hear her answer and see her demeanor and you have seen it here all week, and if you are any judge of character, you know what she is."

The argument in neither instance was objected to nor the Court's attention otherwise directed to it.

The argument made by opposing counsel had no reference to the failure of either of the parties to testify, nor to their disqualification under the statute, art. 3716, Vernon's Ann.Civ.St., so that argument was not provocative of that made by counsel in the closing argument.

The Supreme Court has not yet, when it has had the occasion and opportunity to speak, permitted any reference, directly or indirectly, made to the inhibition of the statute, supra, to stand as harmless error but has held it reversible error. Brackenridge v. Roberts, 114 Tex. 418, 267 S.W. 244(3), at page 246; Ragsdale v. Ragsdale, 142 Tex. 476, 179 S.W.2d 291 (17-18), page 296.

In the latter case the Brackenridge case is cited and it is said "this court held it was error to permit counsel to state to the jury that certain witnesses were not permitted by statute to testify to transactions with the deceased, and for that reason counsel were afraid to let them testify. In that case it was held that such conduct was violative of the principle and spirit of article 3716 and constituted reversible error."

In the Ragsdale case there was a mere inquiry; "State whether, or not, you are now fully willing to testify fully in regard to all matters pertaining to this lawsuit?" to which witness answered in the same language she was. It has several times been held by Courts of Civil Appeal argument of the character here made is improper, and under the facts of those cases prejudicial and reversible error. Gray v. Cheatham, Tex.Civ.App., 52 S.W.2d 762; Ashmore v. Pike, Tex.Civ.App., 108 S.W.2d 276; Johnson v. Durst, Tex.Civ.App., 115 S.W.2d 1000; Vetter v. Nicholson, Tex.Civ.App., 121 S.W.2d 1024; Cloudt v. Hutcherson, Tex.Civ.App., 175 S.W.2d 643.

Appellee points out differences in these last cases from the instant case and says the arguments in those cases were accompanied by direct or inferential suggestions to the jury to consider matters which might have been developed except for the prohibition of the statute. The case of Adamson v. Burgle, Tex.Civ.App., 186 S.W.2d 388 is cited in support of the proposition it is essential the argument directly or indirectly suggest something of the sort. The argument there was made with respect to an entirely different circumstance and the reference made to the disqualification in that connection 186 S.W.2d at page 393, and the court held under the circumstances the reference and argument was not prejudicial and if harmful could have been removed by proper instruction.

In the instant case an instruction by the court could have hardly done more than what counsel did. Counsel advised the jury as to what the law is and suggested no speculation as to what the testimony might be. In the closing argument it was pointed out Miss Robbins was put on for the sole purpose of relating her history, etc. This it seems suggests she might have given other testimony but for the statute. The statute disqualified the witnesses and prohibited their testifying, except as therein provided and their failure to testify needed no ex-

planation, and the explanation emphasized the fact their failure might not be because they had no information to give but might give valuable and pertinent testimony except for the prohibition. There is testimony in the record Wiseman had been in the hospital where Miss Robbins nursed and that he was fond of her and regarded her as a very nice young woman, etc. Except for the prohibition of the statute she might have well explained some of the relationships suggested by argument as suspicious, and may have given some very reasonable explanations why Wiseman preferred her and made her the beneficiary of an unnatural will. The jury might have well so reasoned. We cannot say argument the Supreme Court describes as violative of the principle and spirit of the statute is not harmful and prejudicial, and we, therefore, hold the argument is reversible error.

■ We have already pointed out that in our opinion the court could not have cured the error and removed the harm by an instruction and in such circumstances it was not essential that exception be taken. Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054 (T) and the cases there cited.

And, as said in some cases, the objection might have further impressed the jury with the possibilities in the situation. Johnson v. Durst, Tex.Civ.App., 115 S.W.2d 1000; Robbins v. Wynne, Tex.Com.App., 44 S.W. 2d 946; to which other cases might be added.

There is a more impelling reason, in our opinion, why this case must be reversed. The following interrogatory was propounded to a number of witnesses over the objections of the contestant: "Please state whether or not, in your opinion, decedent, E. E. Wiseman had sufficient mental capacity to understand the business of making a will, the effect of his act in making a will, the general nature of his property, and the claims of relatives and other persons upon him? Please answer fully."

Numerous other witnesses, over objections, were permitted to answer an interrogatory in this form: "Please state whether or not, in your opinion, decedent, E. E. Wiseman, during the time that you knew him had sufficient mentality or mental capacity to understand the business of making a will, the effect of making a will, the claims of relatives and other persons upon him, the general nature of his property devised by a will, and all matters incident to the making of a will?"

The witnesses in each instance gave favorable affirmative answers. At least one young witness fourteen years of age made the significant reply: "All the time I was around him he seemed to have the qualifications of making it."

The Court defined testamentary capacity thus: "By the words 'testamentary capacity' is meant the person making the will must, at the time the will is executed, have sufficient ability to understand the business in which he is engaged, the effect of his acts in making the will, the capacity to know the objects of his bounty and their claims upon him, and the general nature of his property."

■ The sole issue submitted to the jury was did Wiseman at the time he wrote the instrument offered for probate have testamentary capacity? The jury were called upon to answer the very interrogatory propounded to the witnesses. Each of the elements of testamentary capacity was submitted to them and the answer called for and given was did he have testamentary capacity? That is a question of law and since the case of Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621(T), 36 L.R.A. 64, it has been the law no witness will be permitted to state his opinion of the capacity of the testator to make a will. All that may be said on this question has been too well said, especially in the closing paragraphs of the opinion of Judge Brown commencing near the top of page 628 of 31 S.W., to undertake to repeat it here. The case has been many times followed and it will serve no purpose to list them. The question has never been better discussed.

It is suggested here the inquiries were not, did Wiseman have the capacity to make the will he did make, but whether or not he could understand the business of making a will. There is no room for such a distinction nor for argument, we think. This sug-

gestion is answered in a quotation made by Judge Brown in the Brown case, supra: "The question, we think, was properly excluded. It asked for the doctor's opinion of the mental capacity of the testator some two or three months before he made his will. Mental capacity for what? To make a will, for that was in issue."

Mental capacity to make the will was the issue in the instant case and if the inquiries had no relevancy to that issue they were idle.

The Appellant complains the trial court erred in declining to submit the issue of undue influence. It is contended the issue was raised because it is shown by the evidence the will was an unnatural one; because it is disclosed Wiseman had been with Miss Robbins socially on several occasions; because of Wiseman's failing health and because Miss Robbins had sought a loan of $400 from Wiseman through a letter written to him.

We are not entirely free from doubt on this point. We are not disposed to search a considerable statement of facts for all the evidence that may bear upon the issue. The will is unnatural, though it may not be unreasonable. What it was that acted upon the mind of Wiseman and caused him to make Miss Robbins the ultimate and principal beneficiary is not clear. There is a volume of testimony pro and con on Wiseman's testamentary capacity and it is undisputed he was in failing and poor health. There is considerable testimony in the record that demonstrates a relationship between Wiseman and Miss Robbins that is not usual and normal for two people such as they were under the facts and circumstances of the case. Miss Robbins addressed a letter to Wiseman as "Dear Pop" and asked for a loan of $400 and concluded it "Love to you, Lola".

■ It is a rare case in which direct evidence of undue influence can be produced. The law is well summed up in Drewry v. Armstrong, Tex.Civ.App., 223 S.W. 281, at page 284 (e.r.) where it is said: "It is true that the exercise of undue influence in procuring the execution of a will can rarely, if ever, be shown except by circumstances, and that where the will in question makes an unreasonable or unnatural disposition of the testator's property, and the testator at the time of making the will was so weakened in body and mind as to be easily susceptible of influence exerted by others, and the beneficiaries of such unnatural bequest are shown to have been in position to exercise undue influence, a jury or court would be authorized to find that such influence was exercised."

It is our conclusion, under all the facts and circumstances of this case the issue of undue influence should have been submitted to the jury.

■ Complaint is made that the court erroneously permitted a number of witnesses to testify in their opinion Wiseman was of sound mind over the objections the proper predicate had not been laid and that the witnesses did not have sufficient opportunity to observe the acts and conduct of Wiseman to give the opinion. There is no statement of any other evidence given by the witnesses, nor is there a statement they did not testify to other facts than the one complained of. As thus presented we will not search the record to determine what the testimony of the several witnesses may have been, if other testimony was given, but will presume the trial court found a sufficient predicate had been laid and, therefore, properly admitted the testimony. Rule 418, Texas Rules of Civil Procedure is not sufficiently complied with. Associated Employers Lloyds v. Groce, Tex.Civ.App., 194 S.W.2d 103, pars. (17-18).

The foregoing disposes of the issues regarded as of controlling importance. Numerous other points are set up in the brief, but many of them such as those having to do with the argument, and misconduct of the jury will not likely arise again. There are others that present harmless error, if error at all, which we deem unnecessary to discuss, and others we regard as not well taken but it is thought discussion of them will not be of value and for the sake of brevity a detailed consideration of them is omitted.

For the errors and reasons discussed the judgment of the trial court is reversed and the case remanded.